AUTO-OWNERS INSURANCE COMPANY v MARTIN

Docket No. 281482. Submitted May 5, 2009, at Lansing. Decided June 16, 2009, at 9:00 a.m.

Victor Martin had an accident that injured Paula Mapes while Martin was driving a vehicle owned by Grand Greenville, Inc., a used car dealer. The car was insured under a garage liability policy issued by Auto-Owners Insurance Company to Grand Greenville, and Martin had an automobile insurance policy from State Farm Mutual Automobile Insurance Company for his personal automobile. Mapes and her husband, Stephen Mapes, brought a negligence action related to the accident against Martin and Grand Greenville. Auto-Owners brought an action in the Kent Circuit Court against Martin, State Farm, and the Mapeses, seeking a declaratory judgment on, among other things, the priority of coverage for the Mapeses' claim under the Auto-Owners and State Farm insurance policies. On competing motions for summary disposition by Auto-Owners and State Farm and Martin, the court, James R. Redford, J., issued a judgment declaring that Auto-Owners is liable for the first $20,000 as primary coverage for Martin, State Farm is liable for the next $100,000 under its policy insuring Martin, and Auto-Owners is liable for the next $980,000 pursuant to its coverage of Grand Greenville. The court also denied State Farm's request that Auto-Owners be ordered to reimburse State Farm for the cost of defending Martin against the Mapeses' action. State Farm and Martin appealed.

The Court of Appeals *held*:

1. The no-fault act, MCL 500.3101 *et seq.*, requires that an automobile insurance policy sold to a vehicle owner pursuant to the act must provide coverage for residual liability arising from the use of the insured vehicle. A vehicle owner is required to provide primary coverage for his or her vehicle and all permissive users of the vehicle. In this case, Auto-Owners knew or should have known that a clause in its policy excluding coverage to the extent that a garage customer is covered by other applicable insurance violated the no-fault act and was invalid. When an insurer includes an exclusionary clause in its policy that it knows or should know is invalid under the no-fault act, the policy is considered ambiguous

and must be construed in favor of the insured and against the insurer. Here, Auto-Owners may not rely on the void exclusion to limit primary coverage for Martin, a permissive user, to the statutory minimum. Instead, the Auto-Owners policy must be construed to provide primary coverage to both Grand Greenville and Martin up to the Auto-Owners policy limits.

2. Under general principles of contract law, voiding the invalid clause would leave the remaining terms of the policy intact. Those remaining terms provide liability coverage of up to $1 million to any person using Grand Greenville's automobile with permission.

3. Because Auto-Owners is required to provide primary residual liability coverage for Martin's use of Grand Greenville's vehicle up to its policy limits, it follows that Auto-Owners is obligated to defend Martin against the Mapeses' action and that State Farm is entitled to reimbursement by Auto-Owners for the cost of defending Martin against that action.

Reversed and remanded for a grant of summary disposition for State Farm and Martin and a declaratory judgment that Auto-Owners is primarily liable for Martin's use of Grand Greenville's vehicle (up to its $1 million policy limit), that State Farm is only liable after Auto-Owners' coverage has been exhausted, and that State Farm is entitled to reimbursement for the cost of defending Martin against the Mapeses' action.

1. INSURANCE — NO-FAULT — RESIDUAL LIABILITY — VEHICLE OWNERS.

The no-fault act requires a vehicle owner to provide primary residual liability insurance coverage for permissive users of the owner's vehicle (MCL 500.3101 *et seq.*).

2. INSURANCE — NO-FAULT — RESIDUAL LIABILITY — POLICIES — JUDICIAL CONSTRUCTION.

A clause in an automobile insurance policy that excludes or limits primary residual liability coverage for a permissive user of the insured owner's vehicle in violation of the no-fault act must be deemed by a court to be ambiguous and construed to provide such coverage up to the policy limits for a permissive user of the insured owner's vehicle.

3. INSURANCE — NO-FAULT — RESIDUAL LIABILITY — PERMISSIVE VEHICLE USERS — INSURERS' DUTY TO DEFEND.

A vehicle owner's insurer that provides residual liability coverage to a permissive user of the owner's vehicle has the obligation of defending the permissive user against a negligence action for injury related to the permissive user's operation of the owner's vehicle.

*Willingham & Coté, P.C.* (by *John A. Yeager* and *Leon J. Letter*), for Auto-Owners Insurance Company.

*Bensinger, Cotant & Menkes, PC* (by *Dale L. Arndt*), for Victor Martin and State Farm Mutual Automobile Insurance Company.

Amicus Curiae:

*Kelley, Casey & Moyer, P.C.* (by *Timothy F. Casey*), for Citizens Insurance Company of America.

Before: K. F. KELLY, P.J., and CAVANAGH and BECKERING, JJ.

PER CURIAM. In this declaratory judgment action, the issue before us is the priority of liability insurance coverage with respect to a motor vehicle accident that occurred while the allegedly at-fault driver, defendant Victor Martin, was driving a vehicle with the permission of the owner, Grand Greenville, Inc. (Grand Greenville), a used car dealership. Martin and his insurer, defendant State Farm Mutual Automobile Insurance Company (State Farm), appeal as of right the trial court's October 9, 2007, order denying their motion for summary disposition and granting summary disposition to plaintiff Auto-Owners Insurance Company (Auto-Owners), Grand Greenville's insurer. According to State Farm and Martin, the trial court erred by determining that Auto-Owners' primary liability coverage was limited to $20,000 and that Auto-Owners had no obligation to defend Martin in the underlying negligence action. We agree. Accordingly, we reverse and remand to the trial court for a grant of summary disposition in favor of State Farm and Martin and a declaratory judgment that Auto-Owners is primarily liable, up to its $1 million policy limit, for Martin's use of Grand Greenville's vehicle, that State Farm is only liable

on an excess basis after Auto-Owners' coverage has been exhausted, and that State Farm is entitled to reimbursement of defense costs.

I

The pertinent facts of this case are undisputed. On March 22, 2004, Martin was involved in a motor vehicle accident with defendant Paula Mapes. At the time of the accident, Martin was driving a vehicle owned by Grand Greenville. Martin was interested in purchasing the vehicle, and the trial court determined that he was driving it with Grand Greenville's permission. Grand Greenville carried garage liability insurance issued by Auto-Owners. Martin carried automobile insurance issued by State Farm on his personal vehicle, which was not involved in the accident.

Auto-Owners' insurance policy provides garage liability coverage of up to $1 million. Section IV of the policy, entitled "DEFINITIONS," provides, in part:

> A. "INSURED" shall mean, wherever used in Coverages A and B[1] and in other parts of this coverage form when applicable to these coverages, not only the named insured but also . . . any person while using an automobile covered by this coverage form and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured.
>
> * * *
>
> Garage customers[2] are not insureds with respect to the use of automobiles covered by this coverage form except in accordance with the following additional provisions:

---

[1] Coverages A and B are "BODILY INJURY LIABILITY" and "PROPERTY DAMAGE LIABILITY" under section I of the policy.

[2] The parties agree that Martin was a "garage customer" as defined by the policy.

(1) If there is other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer and the limits of such insurance are sufficient to pay damages up to the applicable limit of the financial responsibility law of the state where the automobile is principally garaged, no damages are collectible under the policy.

(2) If there is other valid and collectible insurance available to the garage customer, whether primary, excess or contingent, and the limits of such insurance are insufficient to pay damages up to the applicable limit of the aforesaid financial responsibility law, then this insurance shall apply to the excess of damages up to such limit.

(3) If there is no other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer, this insurance shall apply but the amount of damages payable under this policy shall not exceed the applicable limit of the aforesaid financial responsibility law.

The section of the policy entitled "CONDITIONS" provides, in part:

5. FINANCIAL RESPONSIBILITY. Such insurance as is afforded by this coverage form under Coverages A and B shall comply with the provision of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of an automobile during the policy period, to the extent of the coverage and limits of liability required by such law.

\* \* \*

9. OTHER INSURANCE. . . . Except when stated to apply in excess of or contingent upon the absence of other insurance, the insurance afforded by this is [sic] coverage form is primary insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the

amount of the Company's liability under this coverage form shall not be reduced by the existence of such other insurance.

State Farm's insurance policy provides liability limits of $100,000 for each person and $300,000 for each accident. With respect to liability coverage for the use of non-owned cars, the policy provides:

> 3. Temporary Substitute Car, Non-Owned Car, Trailer
>
> ' If a *temporary substitute car*, a *non-owned car* or a trailer designed for use with a *private passenger car* or *utility vehicle*:
>
> a. has other vehicle liability coverage on it; or
>
> b. is self-insured under any motor vehicle financial responsibility law, a motor carrier law or any similar law,
>
> then these coverages are excess over such insurance or self-insurance.

On February 16, 2006, Mapes and her husband filed a negligence action against Martin and Grand Greenville for injuries she sustained in the accident. On April 2, 2007, Auto-Owners filed a declaratory judgment action seeking a determination of the priority of coverage under Auto-Owners' and State Farm's insurance policies. Thereafter, State Farm and Martin moved for summary disposition pursuant to MCR 2.116(C)(10) and (I), and Auto-Owners moved for summary disposition under MCR 2.116(I)(2).

Following a hearing on the parties' motions for summary disposition, the trial court determined, pursuant to *Citizens Ins Co of America v Federated Mut Ins Co*, 448 Mich 225; 531 NW2d 138 (1995) (*Citizens*), that Auto-Owners was responsible for paying $20,000 on behalf of Martin under Michigan's no-fault act, MCL 500.3101 *et seq.*, but that it "was permissible for [Auto-Owners] to exclude coverage applicable to [Martin]

above the $20,000/$40,000 limits of liability." The court ordered that "with respect to the payment of the plaintiffs in the underlying [liability] case . . . [Auto-Owners] shall be responsible for paying the first $20,000 on behalf of [Martin]; [State Farm] shall be responsible for paying the next $100,000 under its policy insuring [Martin]; and [Auto-Owners] shall be responsible for paying up to the next $980,000 pursuant to its coverage of [Grand Greenville]." The court denied State Farm's request for defense costs. State Farm and Martin filed a motion for reconsideration, which the trial court denied. State Farm and Martin now appeal as of right.

II

We review a trial court's decision on a motion for summary disposition de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, we consider all the evidence submitted by the parties in the light most favorable to the nonmoving party. *Id.* at 119-120. Summary disposition should be granted only where the evidence fails to establish a genuine issue regarding any material fact. *Id.* at 120. Under MCR 2.116(I)(2), summary disposition is properly granted in favor of the nonmoving party if that party, rather than the moving party, is entitled to judgment. *DaimlerChrysler Corp v Wesco Distribution, Inc*, 281 Mich App 240, 245; 760 NW2d 828 (2008).

Insurance policies are interpreted in accordance with the principles of contract interpretation. *Farmers Ins Exch v Kurzmann*, 257 Mich App 412, 417; 668 NW2d

199 (2003) (*Kurzmann*). Insurance policies are also subject to statutory regulation, and mandatory statutory provisions must be read into them. *Id.* at 417-418; see also *Casey v Auto-Owners Ins Co*, 273 Mich App 388, 399; 729 NW2d 277 (2006). Insurance policy provisions that conflict with statutes are invalid, but the contracting parties are assumed to have intended a valid contract. *Roberts v Titan Ins Co (On Reconsideration)*, 282 Mich App 339, 358-359; 764 NW2d 304 (2009). Therefore, the policy must be interpreted in harmony with statutory requirements when possible. *Id.* at 359. The interpretation of clear contractual language is an issue of law reviewed de novo. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003). The determination whether contractual language is ambiguous is also an issue of law that is reviewed de novo. *Casey, supra* at 394. While ambiguities in a contract generally raise questions of fact for a jury, if a contract must be construed according to its terms alone, it is the court's duty to interpret the language. *Klapp, supra* at 469; *Kurzmann, supra* at 418. When the intent of the parties in an insurance contract cannot be ascertained from the evidence provided, any ambiguities should be construed against the insurer. *Klapp, supra* at 472, 474, 477 n 16; *Kurzmann, supra* at 418.

In *Citizens*, our Supreme Court considered two consolidated cases, each involving a vehicle insured under an automobile liability policy issued by Federated Insurance Company to the vehicle owner but driven by a nonowner. *Citizens, supra* at 227. "In each case, the driver of the vehicle carried insurance for a personal automobile that was not involved in the accident at issue. . . . Following the accident in each case, personal injury actions were initiated by the accident victims against the respective drivers." *Id.* at 228. Initially, the Court determined that "while subject to certain excep-

tions . . . , the no-fault act unambiguously requires that a policy of automobile insurance, sold to a vehicle owner pursuant to the act, must provide coverage for residual liability arising from *use* of the vehicle so insured." *Id.* at 230 (emphasis in original). The Court further determined that Federated's insurance policy violated the no-fault act in that it denied "residual liability coverage to an entire class of persons" who *used* the vehicles that it insured, specifically "customers" who used the vehicles with the owners' permission, unless the customer was uninsured or underinsured. *Id.* at 230-231.

The *Citizens* Court next considered the amount of residual liability coverage that Federated was required to provide, stating:

> We resolve that question in accord with *State Farm Mutual Automobile Ins Co v Shelly*, 394 Mich 448; 231 NW2d 641 (1975), in which this Court held that when an unambiguous insurance policy is void because it is against the policy of the Motor Vehicle Accidents Claims Act, MCL 257.1101 *et seq.* . . . , the reinstated coverage is limited to the amount required by the applicable automobile insurance law. See also MCL 500.3101 . . . , which states that a policy represented or sold as providing security shall be deemed to provide insurance for the payment of the benefits described in § 3101 of the no-fault act.

> In this state, the amount of residual liability coverage required by the applicable no-fault law is determined by reference to § 3009(1). See MCL 500.3131(2). Section 3009(1) requires coverage of at least $20,000 for injury or death of one person, and $40,000 for injury or death of two or more persons (20/40 coverage). MCL 500.3009(1) . . . . Therefore, Federated's reinstated coverage must provide the 20/40 statutory minimum.

> Moreover, Federated's reinstated coverage is *primary* to any insurance benefits that may be available under policies that the drivers have purchased. Although we acknowledge that the Legislature has remained silent concerning who

among competing insurers must provide *primary* residual liability benefits, we refuse to construe that silence as expressly authorizing an owner's insurer, such as Federated, to unilaterally dictate the priority of coverage among insurers in a manner that shifts insurance costs to the nonowner of the vehicle. To construe the Legislature's silence in that manner would undermine the dominant principle expressly embodied by the no-fault act: vehicle owners and their insurers are responsible for bearing the costs of injuries caused by the permissive use or operation of the vehicle. Instead, because the obligation to obtain residual liability insurance is triggered by the obligation to register a vehicle, rather than by the operation of the vehicle, we think it reasonable to conclude that the owner or registrant of the vehicle has the primary duty to provide residual liability insurance.

Accordingly, in each of these cases, Federated must provide *primary* 20/40 residual liability coverage. [*Citizens*, *supra* at 234-235 (emphasis in original).]

The Court further concluded that the insurers of the drivers were only obligated to pay residual liability benefits if provided for under the terms of their respective policies. *Id.* at 236.

In this case, Auto-Owners acknowledges that pursuant to the Supreme Court's holding in *Citizens*, the provision in its policy excluding residual liability coverage for "garage customers"—except when the customer is uninsured or underinsured "up to the applicable limit of the financial responsibility law of the state"—is invalid to the extent that it would preclude coverage required by the no-fault act. Thus, the primary question at hand is the amount of residual liability coverage Auto-Owners is required to provide for Martin's use of Grand Greenville's vehicle. As indicated, Auto-Owners argues (and the trial court ruled) that under *Citizens* its primary liability coverage of Martin is limited to the "20/40" coverage requirement of the no-fault act.

Thereafter, State Farm must provide excess liability coverage under the "non-owned car" provision of its policy, up to its policy limit of $100,000, and then Auto-Owners is responsible for up to the next $980,000 pursuant to its coverage of Grand Greenville and Grand Greenville's liability under the owner's liability statute. On the other hand, State Farm and Martin argue that under caselaw issued after *Citizens*, Auto-Owners is primarily liable up to its policy limit of $1 million before State Farm's excess coverage applies.

In *State Farm Mut Automobile Ins Co v Enterprise Leasing Co*, 452 Mich 25; 549 NW2d 345 (1996) (*Enterprise*), our Supreme Court considered, in three consolidated cases, "whether Michigan's no-fault insurance act is violated by a car rental agreement purporting to shift the responsibility for providing primary residual liability coverage on the vehicle from the owner to the driver and the driver's insurer." *Id.* at 27. The *Citizens* Court had specifically declined to apply its conclusion to situations involving rental cars, determining that it was not necessary to overrule *State Farm Mut Automobile Ins Co v Snappy Car Rental, Inc*, 196 Mich App 143; 492 NW2d 500 (1992) (*Snappy I*). *Citizens, supra* at 233. In *Enterprise*, however, the Court overruled *Snappy I*, stating, in part:

> Our decision to let *Snappy I* stand was the result of an attempt to distinguish the facts of the cases. That is a distinction we no longer feel is sustainable. . . . We now conclude that a rental car contract is no more voluntary or mutual than the dealership's policy at issue in *Citizens*.
>
> . . . The driver is not informed that the rental car company, as the owner, is required by law to carry insurance on the vehicle that covers any permissive user. The owner cannot shift that responsibility to another party. Just as Federated was required to provide insurance coverage for permissive users in *Citizens*, we now hold that a

car rental company, like any other car owner, must obtain insurance coverage for permissive users of its vehicles.

Further, subsequent developments in the case law have convinced us that the effect of leaving *Snappy I* intact, even if the distinction could be sustained, would be to eviscerate the intended effect of *Citizens*. In *Citizens*, we spoke strongly about the importance of placing the burden of providing primary liability coverage on vehicle owners, as intended by the Legislature. . . . The gravamen of our holding in *Citizens* is that the no-fault act requires car owners to be primarily responsible for insurance coverage on their vehicles. However, the car rental companies have been largely successful in avoiding that responsibility, as demonstrated by the Court of Appeals decisions in these cases. Under *Snappy I*, the Court of Appeals found that it was required to permit car owners to shift the primary responsibility for providing coverage for the use of their vehicles to the driver and the driver's insurer. Because this violates the intent of the no-fault act, we overturn *Snappy I* to the extent that it holds that car owners may avoid primary responsibility for vehicle insurance coverage by agreeing to allocate that responsibility to the driver or driver's insurer.

Even if the driver could make a voluntary election to allocate the responsibility for coverage to the driver's insurer, the resulting agreement to allocate would still be void. Enforcing such an agreement would permit the driver to unilaterally dictate the insurance obligations of the parties. Those obligations are a matter of contract, and cannot be unilaterally reassigned. In *Citizens*, we declined to permit an owner's insurer to dictate those obligations. . . . Under the terms of the insurance contracts, the driver cannot bind the insurance company that issued the driver's policy of coverage for a personal automobile to provide coverage for another car.

The driver cannot defeat the provisions of the no-fault act by stating that the owner need not pay insurance. Because the driver cannot bind the driver's insurer, a

driver who agreed to shift coverage would remain solely liable for damages caused by use of the vehicle. The rental car would be left uninsured under the terms of the rental agreement stating that the owner provides no insurance. This lack of coverage violates the no-fault act. . . . Just as the car rental company cannot shift liability to a driver's insurer, it cannot shift liability to a driver personally. *Either shift of responsibility away from the owner would violate the act because it requires owners to provide primary coverage.* We accordingly hold that the car rental companies and their insurers are required to provide primary residual liability coverage for the permissive use of the rental cars, *up to their policy limits or the minimum required by statute.* [*Enterprise, supra* at 33-36 (emphasis added; heading omitted).]

Notably, the Court did not specify whether the "policy limits" or the "minimum required by statute" controls in situations where the owner or owner's insurer attempts to exclude coverage completely. The Court simply concluded that "*any* such shifting provision is void. Vehicle owners, including the car rental companies in these cases, *are required to provide primary coverage* for their vehicles *and all permissive users of their vehicles.*" *Id.* at 27-28 (emphasis added). The Court then remanded the cases to the trial court to allocate the liability between the primary insurers (the car rental companies' insurers) and the excess insurers (the drivers' insurers). *Id.* at 41.

On remand, the trial court concluded that Enterprise, which was self-insured with Travelers Insurance Company as an excess carrier for claims over $500,000, could not limit the amount of its liability and rejected Enterprise's indemnity claim against Majid Sako, the driver. *Enterprise Leasing Co of Detroit v Sako*, 233 Mich App 281, 283; 590 NW2d 617 (1998). Plaintiffs Enterprise and Travelers subsequently appealed to this

Court. A panel of this Court stated the plaintiffs' arguments, which are similar to Auto-Owners' arguments in this case, as follows:

> Plaintiffs argue that, because the financial responsibility act only requires insurance with minimum limits of $20,000/$40,000, Enterprise was responsible as a self-insurer only for the first $40,000 of claims by the multiple plaintiffs in the underlying action and that anything over $40,000 is excess and, therefore, State Farm's excess coverage becomes applicable at that point. In other words, Enterprise would be liable for the first $40,000 as a self-insurer, State Farm would be responsible for the next $50,000 (the policy limits) as the excess carrier [the driver's insurer], and then Enterprise would be liable in tort for the amounts over $90,000 as the owner of the vehicle, subject to its indemnity claim against Sako and, of course, the coverage by Travelers for amounts over $500,000. [*Id.* at 283-284.]

In rejecting the plaintiffs' arguments, the panel noted that the arguments were "based on the premise that a self-insurer's responsibility is limited to the minimum coverage required by law." *Id.* at 284. The panel stated that "a certificate of self-insurance issued by the Secretary of State is the functional equivalent of a commercial policy of insurance with respect to the no-fault act and the financial responsibility act. When a company applies for self-insured status, that company represents that it is able and will continue to be able to satisfy judgments obtained against it." *Id.* (citations omitted). Accordingly, the panel held:

> There is nothing in the financial responsibility statute that limits the self-insured's liability to the minimum coverage requirements of the no-fault or financial responsibility acts. A self-insured's liability extends to the full value of its assets. A company that prefers to avoid unlimited risk has the option of purchasing a commercial insurance policy.

We are convinced that, when a car rental company enjoys the advantages of self-insurance, it cannot attempt to limit its risks by asserting that its responsibility is limited to the minimum coverage requirements of the no-fault or the financial responsibility acts. Consequently, Enterprise is liable for the full amount of the settlement. Moreover, because State Farm's coverage was excess to any other insurance, and because Enterprise's self-insurance was not limited to the statutory minimum, State Farm is not directly liable for any portion of the settlement.

We now turn to the second issue raised, namely, whether Sako is liable for any portion of the settlement under an indemnification claim. However, in light of our resolution of the first issue, and a concession made by plaintiffs in their brief on the second issue, the indemnification issue may now be deemed abandoned. In their brief on appeal, plaintiffs, in footnote 12, concede that indemnity does not apply to the first $40,000 because the Supreme Court's decision in this case makes Enterprise first in priority with respect to the amount of primary residual liability coverage. However, as resolved in the first issue, the limit of Enterprise's primary liability is not $40,000 as Enterprise argues, but is the full value of their assets. Therefore, the import of plaintiffs' concession is that indemnity does not apply to that higher amount of primary liability, i.e., the full value of Enterprise's assets. Accordingly, in light of this discussion, we decline to address the merits of the indemnity issue. [*Id.* at 284-285.]

Thereafter, a panel of this Court ruled in *Kurzmann* that in circumstances where the insurer knows or should know that an exclusionary clause in its policy is invalid, the insurer is primarily liable up to the limits of its policy. *Kurzmann, supra* at 419-420, 422. *Kurzmann* involved an automobile liability policy that violated public policy under the no-fault act by purporting to exclude coverage for bodily injury to the insured or a member of the insured's family. *Id.* at 414, 418-419. The exclusion at issue had been declared void as against

public policy in Michigan for over 20 years. *Id.* at 418. The trial court held that "the insurance policy was ambiguous because it specifically stated that it was in compliance with financial-responsibility laws and yet included an invalid limitation on bodily-injury coverage for insureds." *Id.* at 416. Citing *Shelly*, the insurer argued that while its exclusionary provision was void, any reinstated coverage should be limited to the minimum amount required by the statute. *Id.* at 415, 419. The insurer further argued that the language excluding coverage was unambiguous and thus the rule of reasonable expectation was inapplicable. *Id.* at 415. The panel rejected the insurer's arguments and held that because the insurer knew or should have known at the time it issued the policy that the exclusion was void, the insurer was bound by the policy limits. Adopting the rationale set forth in *Detroit Automobile Inter-Ins Exch v Parmelee*, 135 Mich App 567, 570; 355 NW2d 280 (1984), (*Parmelee*), the *Kurzmann* panel explained:

> *Parmelee* . . . held that when an insurance policy contains an exclusion that the insurer knows or should know is void,[3] the insurer may not rely on the void exclusion to reduce the policy coverage to the statutory minimum. This Court declared that the exclusionary clause was *ambiguous* in light of the fact that the [insurer] knew the provision violated public policy and allowed its insured to pay for a policy containing additional residual bodily injury coverage beyond the amount required by law.
>
> * * *
>
> We see no reason why Farmers [the insurer in *Kurzmann*] should benefit from the statutory minimums when they knowingly placed invalid exclusionary provisions in

---

[3] In context, this reference to a "void" policy provision plainly referred to a policy provision that was void to the extent that it would limit liability coverage required by the no-fault act.

their policy and then allowed their insureds to purchase increased coverage. Farmers' blatant violation of the long-held public policy in this case is offensive and should not be condoned or rewarded. [*Kurzmann, supra* at 419-420, 422 (citations omitted).]

Given the insurer's inclusion of an exclusion it knew to be invalid, the panel held the insurer primarily liable up to the policy limits. *Id.* at 422.

The *Kurzmann* panel also considered *Shelly* and *Citizens*, where the reinstated coverage was limited to the amount required by the applicable automobile insurance law, but effectively concluded that those decisions did not preclude it from following *Parmelee* under the circumstances of the case:

> Notably, Farmers completely fails to cite *any* authority that overrules or even criticizes the decision reached in *Parmelee*. Moreover, a review of the cases cited by Farmers shows that they either predate *Parmelee* or are distinguishable.
>
> For instance, Farmers cites *Shelly* . . . for the proposition that if an unambiguous provision in an insurance contract is void, the reinstated coverage is limited to the minimum amount mandated by law. Not surprisingly, Farmers overlooks the fact that *Shelly* was decided before this Court's decision in *Parmelee*. Indeed, as previously indicated, *Parmelee, supra*, actually noted the plaintiff insurance company's reliance on *Shelly* for that same proposition but did not find it persuasive. Farmers' reliance on [*Citizens*] is also without merit. In *Citizens, supra* at 227-228, the policy exclusion at issue actually dealt with an insurer's liability when the driver of the vehicle involved in an accident carried an insurance policy for a personal automobile not involved in the accident. As explained in [*Enterprise*], *Citizens, supra* at 227, required the Court "to determine 'the validity of a vehicle owner's policy of liability insurance that denies coverage to any permissive user who is otherwise insured for an amount equal to that specified by the no-fault act.' " We also note that

*Citizens* relied on *Shelly* when it determined that the reinstated coverage was limited to the statutory minimum. *Citizens, supra* at 234. [*Kurzmann, supra* at 420-421.]

It appears that the *Kurzmann* panel followed *Parmelee* over *Shelly* in part because *Parmelee* was decided more recently than *Shelly*; such reliance fails to appropriately consider the greater precedential weight of *Shelly* as a decision of our Supreme Court.[4] However, the *Kurzmann* panel also referred to the fact that *Parmelee* did not find *Shelly* persuasive under the circumstances presented. The *Parmelee* panel stated that the exclusion at issue had been held void as against public policy and that the insurer "should have been aware that the policy at issue contained a clause that, if not totally void, was certainly ambiguous in the instant situation where defendants had paid for a policy containing extra residual bodily injury coverage of $100,000/$300,000 but the law, MCL 500.3009(1) . . . , required limits of $20,000/$40,000." *Parmelee, supra* at 570. The panel then applied the principle that ambiguity in a policy "must be liberally construed in favor of the insured and against the insurer who drafted it" to affirm the trial court's holding that the contractual policy limits applied in that case.[5] *Id.*

---

[4] Further, the *Kurzmann* Court was not required to follow *Parmelee* under MCR 7.215(J)(1) because *Parmelee* was decided before November 1, 1990, but could find it persuasive and adopt its reasoning.

[5] In *Farm Bureau Gen Ins Co of Michigan v Haller*, 474 Mich 1057 (2006), our Supreme Court denied leave to appeal *Farm Bureau Gen Ins Co of Michigan v Haller*, unpublished opinion per curiam of the Court of Appeals, issued April 26, 2005 (Docket No. 250272) (*Haller*), which applied the *Kurzmann* panel's rationale. The *Haller* panel held that the criminal acts exclusion in the insurance policy at issue violated the no-fault act, the exclusion was unenforceable and invalid, and coverage in the amount of the policy limit was applicable. *Haller, supra* at 2. In holding that the policy limit rather than the statutory minimum applied, the panel stated that it agreed with the conclusion reached in *Kurzmann*,

Like the insurer in *Kurzmann*, Auto-Owners knew or should have known that the exclusionary clause in the policy at issue was void. The no-fault act clearly directs that a policy sold pursuant to the act must provide residual liability coverage for *use* of the vehicle insured, and, eight years before Auto-Owners issued its policy,[6] our Supreme Court expressly declared the type of exclusion at issue invalid. *Citizens, supra.* Consequently, in keeping with this Court's ruling in *Kurzmann*, we find that the exclusionary clause was ambigu-

---

noting that the *Kurzmann* panel had distinguished *Shelly* and *Citizens*. *Id.* at 6. Additionally, the *Haller* panel stated:

> Moreover, and aside from *Kurzmann* and the case law discussed therein, a contractual provision of the insurance policy dictates that the $300,000 policy limit controls. The relevant provision provides:

> #### "COMMON POLICY CONDITIONS

> \* \* \*

> "M. CONFORMITY WITH STATUTE

> "Terms of this policy which are in conflict with the statutes of the state where the property described in the Declarations is located are amended to conform to such statutes."

> Under contract law principles, this self-amending language indicates that the inclusion of an invalid provision, i.e., the "criminal acts" exclusion in this instance, results in the deletion or voiding of the offending language, while leaving intact the remainder of the contractual terms and obligations, including the provisions addressing the extent of the coverage. The insurance policy's liability coverage requires [the insurer] to pay "all sums an 'insured' legally must pay as damages because of 'bodily injury' . . . to which [the] insurance applies, caused by an 'accident' and resulting from the ownership, maintenance, or use of a covered 'auto.' " With regard to the policy's limit regarding liability coverage, the insurance contract provides that $300,000 is the most that [the insurer] "will pay for any one accident or loss." The policy limit of $300,000 remains intact despite the inapplicability of the exclusion for criminal acts. [*Id.*]

[6] The policy was issued on September 10, 2003.

ous in light of the fact that Auto-Owners knew or should have known for at least eight years before its issuance of the policy that its attempt to exclude garage customers (a subset of permissive users) from coverage clearly violated the no-fault act, yet it nevertheless included the exclusion in its policy. Therefore, the policy must be construed in favor of the insured to provide coverage up to the policy limits to both the owner of the vehicle and its permissive users.

In an attempt to distinguish the facts of this case from those in *Kurzmann* and *Parmelee*, Auto-Owners points out that those cases dealt with different exclusionary provisions than the one at issue, provisions "applicable to all the parties and limits of liability." Auto-Owners appears to be referring to the fact that the invalid exclusionary provision in this case only excludes coverage for "garage customers," with certain exceptions; whereas, in *Kurzmann* and *Parmelee*, the exclusionary provisions at issue excluded coverage for the named insured. While Auto-Owners makes a valid distinction, it does not explain why this distinction is material. Because we see no material distinction, we are bound to follow the holding in *Kurzmann* that by knowingly including an invalid exclusionary provision in its policy, an insurer renders the policy ambiguous and the policy must be construed against the insurer.

Auto-Owners also argues that its policy contains a statutory compliance provision that operates to reduce coverage to the statutory minimum in the face of an invalid policy exclusion. The provision states as follows:

5. FINANCIAL RESPONSIBILITY. Such insurance as is afforded by this coverage form under Coverages A and B shall comply with the provision of the motor vehicle financial responsibility law of any state or province which

shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of an automobile during the policy period, to the extent of the coverage and limits of liability required by such law.

Auto-Owners' position lacks merit for several reasons. First, this Court in *Kurzmann* rejected a similar argument by the insurer in that case, and held that the existence of a statutory compliance provision in the face of a known invalid exclusion and policy limits above the statutory minimum rendered the policy ambiguous and therefore the policy limits applied. *Kurzmann, supra* at 416, 418, 421. Second, the provision in Auto-Owners' policy addresses compliance with motor vehicle financial responsibility law, which is not the law at issue in this case. Rather, Auto-Owners' policy violates the no-fault act.[7] Third, Auto-Owners' provision contains no amending or conforming language. It merely states that its policy shall comply with motor vehicle financial responsibility law to the extent of the coverage and limits of liability required by such law. Aside from an improper exclusion of garage users, Auto-Owners' policy did comply with financial responsibility law, as it sold a policy that provided coverage in an amount that complied with financial responsibility law in Michigan. The provision contains no language indicating that in the event an exclusion is deemed void, only the statutory minimum applies. We cannot be expected to read into the policy language that it did not provide. Finally, if Auto-Owners wanted to limit its coverage of garage

---

[7] The distinction between compliance with the financial responsibility act and compliance with the no-fault act was articulated in *Citizens, supra* at 228 and 230 n 3. As pointed out in *Citizens*, "[t]he no-fault act, as opposed to the financial responsibility act, is the most recent expression of this state's public policy concerning motor vehicle liability insurance." *Id.* at 232.

customers to the statutory minimum, it could have expressly stated so; it chose not to, creating the ambiguity at issue.[8]

Even if *Kurzmann* were not binding in this case, Auto-Owners is still liable up to its policy limits under the general principles of contract law. Under such principles, the inclusion of an invalid exclusionary provision results in the deletion or voiding of the offending language, while leaving intact the remainder of the policy's terms and obligations, including the provisions addressing the extent of coverage. Here, the terms of the policy require Auto-Owners to pay "all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law" for damages because of bodily injury or property damage caused by "any person while using an automobile covered by" the insurance policy "provided the actual use of the automobile is with the permission of the named insured." Deletion of the void exclusionary language leaves intact the policy language that covers as an insured any person using the automobile with the permission of the named insured. With regard to liability coverage, the insurance contract provides $1 million as the limit for each occurrence. The policy limit of $1 million remains intact despite the invalid exclusion.

Our finding comports with our Supreme Court's finding in *Enterprise*, which affirmed and extended its holding in *Citizens* that an owner is primarily responsible for paying residual liability benefits, that vehicle

---

[8] Auto-Owners' reliance on *Cohen v Auto Club Ins Ass'n*, 463 Mich 525; 620 NW2d 840 (2001), is also misplaced. In *Cohen*, the dispute involved uninsured motorist coverage, which is not required by the no-fault act. *Cohen, supra* at 530-531. Coverage by vehicle owners for their permissive users, on the other hand, is among those coverages that "are the bedrock of the no-fault system and . . . are not subject to removal by policy language that conflicts with the statute." See *id.* at 531.

owners are required to provide primary coverage for their vehicles and all permissive users of their vehicles, and that any attempt to shift liability away from the owner to the driver violates the no-fault act and is void.[9]

Auto-Owners argued before the trial court that Grand Greenville engaged in a bargained-for commercial transaction, and, consequently, the parties were free to enter into a contract restricting primary coverage to the extent permitted by law. It is noteworthy, however, that Auto-Owners sold Grand Greenville a $1 million policy and acknowledges that the policy covers Grand Greenville, as the owner of the vehicle involved in the accident, up to $1 million. The section of Auto-Owners' policy entitled "OTHER INSURANCE" provides, in pertinent part:

> Except when stated to apply in excess of or contingent upon the absence of other insurance, the insurance afforded by this coverage form is primary insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the Company's liability coverage under this coverage form shall not be reduced by the existence of other such insurance.

By seeking to limit its coverage to the statutory minimum of $20,000, and then any remaining amount of damages for which Grand Greenville is held liable only after Martins' insurance coverage is exhausted, Auto-Owners is attempting to unilaterally shift a portion of the residual liability away from the owner of the vehicle to the driver or the driver's insurance company, neither of which is a party to the contract. Our Supreme Court has expressly condemned such shifting as violative of the no-fault act. As stated in *Citizens*, although "the Legislature has remained silent concerning who among

---

[9] See *Enterprise, supra* at 27, 34, and 36.

competing insurers must provide *primary* residual liability benefits, we refuse to construe that silence as expressly authorizing an owner's insurer . . . to unilaterally dictate the priority of coverage among insurers in a manner that shifts insurance costs to the nonowner of the vehicle." *Citizens, supra* at 235 (emphasis in original). The Supreme Court extended its analysis of this issue in *Enterprise* and held that "*any* such shifting provision is void. Vehicle owners . . . are required to provide primary coverage for their vehicles and all permissive users of their vehicles." *Enterprise, supra* at 27-28 (emphasis added). Pursuant to the owner's liability statute, MCL 257.401, Grand Greenville remains 100 percent liable for damages related to the subject accident. In attempting to distinguish between Grand Greenville as the owner insured and Martin as a permissive user, which Auto-Owners is also statutorily required to include as an insured, Auto-Owners is attempting to unilaterally dictate priority of coverage. This it cannot do. Given our finding that Auto-Owners is primarily liable up to its policy limits of $1 million, we need not address Auto-Owners' argument regarding subrogated indemnification and State Farm's coverage.

III

Finally, we address State Farm's claim that it is entitled to reimbursement of defense costs from Auto-Owners for defending Martin in the underlying action. Auto-Owners asserts that State Farm waived this issue by failing to file a counterclaim seeking reimbursement of its defense costs or request reimbursement in its answer or affirmative defenses. We conclude that this issue was properly preserved for appellate review. Auto-Owners requested a declaratory judgment on the rights and responsibilities of the parties, together with any

other relief to which it was entitled. MCR 2.605, which grants Michigan courts the power to issue declaratory judgments, also grants the courts power to issue further "necessary or proper relief . . . against a party whose rights have been determined by the declaratory judgment." At the hearing on the parties' motions for summary disposition, counsel for State Farm and Martin requested that the trial court consider the issue of defense costs. The court responded, "I find that State Farm is not entitled to the costs of defense from Auto-Owners insofar as State Farm has liability under the policy that Mr. Martin is being required to pay $100,000 for purposes of completeness."

In *Radenbaugh v Farm Bureau Gen Ins Co of Michigan*, 240 Mich App 134, 137-138; 610 NW2d 272 (2000), a panel of this Court addressed insurers' duty to defend:

> It is well settled that "if the allegations of the underlying suit arguably fall within the coverage of the policy, the insurer has a duty to defend its insured." Further,
>
> "[a]n insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy. The duty to defend cannot be limited by the precise language of the pleadings. The insurer has the duty to look behind the third-party's allegations to analyze whether coverage is possible. In a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor."
>
> Also, the following fundamental principles of insurance law apply:
>
> "It is well settled in Michigan that an insurer's duty to defend is broader than its duty to indemnify. In order to determine whether an insurer has a duty to defend its insured, this Court must look to the language of the insurance policy and construe its terms to find the scope of the coverage of the policy." [Citations omitted.]

In this case, section III of Auto-Owners' policy includes a provision regarding its duty to defend, stating that it has "the right and duty to defend . . . any suit against the insured alleging such injury or destruction and seeking damages . . . where the Company is liable to the insured . . . ." The provision further states that Auto-Owners has the obligation to pay certain expenses in addition to the applicable limits of liability. Auto-Owners argues that because Martin is not an "insured" under its policy and it is only obligated to provide liability coverage for Martin under the no-fault act, it has no obligation to defend Martin under the terms of its policy. But, under the holding in *Kurzmann*, Auto-Owners is required to provide primary residual liability coverage for Martin's use of Grand Greenville's vehicle up to its policy limits. Therefore, while *Kurzmann* did not address the issue of defense costs, it follows that Auto-Owners is obligated to defend Martin in the underlying action and that State Farm is entitled to reimbursement for those costs.

Reversed and remanded to the trial court for a grant of summary disposition in favor of State Farm and Martin and a declaratory judgment that Auto-Owners is primarily liable for Martin's use of Grand Greenville's vehicle (up to its $1 million policy limit), that State Farm is only liable on an excess basis after Auto-Owners' coverage has been exhausted, and that State Farm is entitled to reimbursement of defense costs. We do not retain jurisdiction.