*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KEITH BRONNER,

      Plaintiff,

and

ANGELS WITH WINGS TRANSPORT, LLC,

      Intervening Plaintiff,

v

CITY OF DETROIT,

      Defendant/Third-Party Plaintiff-
      Appellee,

and

GFL ENVIRONMENTAL USA, INC., formerly
known as RIZZO ENVIRONMENTAL
SERVICES,

      Third-Party Defendant-Appellant.

UNPUBLISHED
July 9, 2019

No. 340930
Wayne Circuit Court
LC No. 15-013452-NF

Before: MURRAY, C.J., and RIORDAN and CAMERON, JJ.

PER CURIAM.

This matter arises from an automobile accident that resulted in injuries to plaintiff, Keith Bronner, for which defendant/third-party plaintiff the City of Detroit ("the City")—as a self-insured entity under the no-fault insurance act, MCL 500.3101 *et seq.*—paid personal protection insurance (PIP) benefits. The City then filed a third-party complaint against third-party defendant, GFL Environmental USA, Inc., formerly known as Rizzo Environmental Services.

The City claimed that (1) GFL contractually assumed a position of priority regarding payment of no-fault benefits or that, alternatively, (2) GFL had a contractual obligation to indemnify the City for any losses, including PIP benefits, caused by GFL's negligence. The City and GFL filed cross-motions for summary disposition. The trial court denied GFL's motion for summary disposition and granted summary disposition to the City, concluding that the City was contractually entitled to indemnification from GFL. Also, relying on the contract between GFL and the City, the trial court awarded the City attorney fees and costs. After the remaining claims were settled, GFL appealed as of right those decisions by the trial court. We now reverse both orders and remand for entry of an order granting GFL's motion for summary disposition.

## I. BACKGROUND FACTS & PROCEDURAL HISTORY

GFL provides garbage collection services in the City pursuant to a services contract the parties signed in February 2014. Relevant to the present dispute, the services contract contains an indemnification clause, a provision requiring GFL to defend the City against certain legal actions, and a provision requiring GFL to maintain no-fault insurance.

In September of 2014, Bronner sustained bodily injury in a motor vehicle accident when a GLF garbage truck, driven by GFL employee Jason Herndon, struck a City-owned bus in which Bronner was riding. For purposes of this appeal, however, whether Herndon negligently caused the accident is not in dispute. Following the accident, Bronner sought payment of PIP benefits from the City, which is a self-insured entity under the no-fault act. When the City refused to pay the no-fault benefits, Bronner initiated a lawsuit. The City settled its dispute with Bronner and paid him the PIP benefits.

The City, relying on the terms of its services contract with GFL, then filed a third-party complaint against GFL, alleging three things: (1) indemnification from GFL because the City's obligation to pay no-fault benefits arose out of the negligence of GFL's driver who caused the accident by his negligent conduct; (2) contribution from GFL because GFL breached a duty to operate its vehicle in a safe and reasonable manner; and (3) breach of contract by failing to indemnify and defend the city. GFL moved the trial court to summarily dispose of the City's third-party complaint pursuant to MCR 2.116(C)(8), arguing that the City was improperly attempting to avoid liability under the no-fault act. GFL contends that the no-fault statutory scheme does not allow for the City to do so, and that permitting the City to recover pursuant to the services contract would violate the public policy upon which the no-fault act was based. The City responded with its own motion for summary disposition, asserting that the services contract made GFL the priority insurer under the no-fault act, or alternatively, that GFL was required to indemnify the City for payment of Bronner's PIP benefits because such liability was incurred due to the negligence of GFL's employee under the terms of the contract.

After two hearings on the issue, the trial court denied GFL's, and granted the City's, motions for summary disposition, reasoning that the City was entitled to indemnification by GFL under the contractual terms. The trial court declined to determine whether the contract resulted, or legally could have resulted, in GFL becoming the highest-priority insurer under the no-fault act. Later, the trial court granted the City's request for attorney fees and costs pursuant to a clause in the contract, and rejected GFL's argument that the City was not entitled to attorney fees

and costs it paid to its salaried, in-house attorneys, who would have been paid regardless of GFL's alleged negligence, the automobile accident, and this resulting lawsuit.

## II. PAYMENT OF NO-FAULT BENEFITS

GFL argues that the trial court erred when it granted the City's motion for summary disposition because the City, as the owner and insurer of the bus on which Bronner was injured, is obligated to pay Bronner's first-party PIP benefits, and the City's attempts to contract away that obligation violate the no-fault act. We conclude that although the City did not transfer its obligation to pay no-fault benefits, the no-fault act does not permit the City to seek indemnification from GFL.

## A. STANDARD OF REVIEW & GENERAL LAW

This Court reviews "de novo a circuit court's summary disposition decision." *Packowski v United Food & Commercial Workers Local 951*, 289 Mich App 132, 138; 796 NW2d 94 (2010). A written contract's interpretation is also reviewed de novo. *Rory v Continental Ins Co*, 473 Mich 457; 703 NW2d 23 (2005). Similarly, questions involving statutory interpretation are also reviewed de novo. *Dobbelaere v Auto-Owners Ins Co*, 275 Mich App 527, 529; 740 NW2d 503 (2007).

"The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature." *Ford Motor v Dep't of Treasury*, 288 Mich App 491, 496; 794 NW2d 357 (2010). Determining legislative intent begins with the words used in the statute. *MacKenzie v Wales Twp*, 247 Mich App 124, 127; 635 NW2d 335 (2001). "Unless defined in the statute, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used." *Id.* "If the statutory provision at issue is clear and unambiguous, it must be enforced as written, and no judicial construction is permitted or required." *Lockport Twp v Three Rivers*, 319 Mich App 516, 520; 902 NW2d 430 (2017).

"Under ordinary contract principles, if contractual language is clear, construction of the contract is a question of law for the court." *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 547; 904 NW2d 192 (2017) (quotation marks omitted). "We enforce contracts according to their terms, as a corollary to the parties' liberty to enter into a contract." *Reicher v SET Enterprises, Inc*, 283 Mich App 657, 664; 770 NW2d 902 (2009). "Accordingly, we examine the language in the contract, giving it its ordinary and plain meaning if such would be apparent to a reader of the instrument." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 47; 664 NW2d 776 (2003). "An unambiguous contractual provision reflects the parties' intent as a matter of law, and [i]f the language of the contract is unambiguous, we construe and enforce the contract as written." *Holland v Trinity Health Care Corp*, 287 Mich App 524, 527; 791 NW2d 724 (2010) (quotation marks omitted).

" 'The general rule [of contracts] is that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts.' " *Terrien v Zwit*, 467 Mich 56, 71; 648 NW2d 602 (2002), quoting *Twin City Pipe Line Co v Harding Glass Co*, 283 US 353, 356; 51 S Ct 476; 75 L Ed 1112 (1931)

(alteration in *Terrien*). Thus, pursuant to the general rule, "[p]arties are free to contract as they see fit, and courts must enforce contracts as written unless they are in violation of law or public policy." *Village of Edmore v Crystal Automation Sys, Inc*, 322 Mich App 244, 263; 911 NW2d 241 (2017). "Absent some specific basis for finding them unlawful, courts cannot disregard private contracts and covenants in order to advance a particular social good." *Terrien*, 467 Mich at 70.

## B. APPLICABLE LAW & ANALYSIS

The trial court erred by denying GFL's motion for summary disposition and granting summary disposition to the City because the City cannot seek contract indemnification for the payment of PIP benefits under the no-fault act.

"In Michigan, before the enactment of the no-fault insurance act, the only available recourse to victims of motor vehicle accidents seeking to recover damages was to file a common-law tort action." *McCormick v Carrier*, 487 Mich 180, 233-334; 795 NW2d 517 (2010). "[U]nder [this] tort liability system[,] the doctrine of contributory negligence denied benefits to a high percentage of motor vehicle accident victims, minor injuries were overcompensated, serious injuries were undercompensated, long payment delays were commonplace, the court system was overburdened, and those with low income and little education suffered discrimination." *Id.* at 234 (quotation marks and citation omitted). In response to these concerns, "with the enactment of the no-fault act, the Legislature abolished tort liability generally in motor vehicle accident cases and replaced it with a regime that established that a person injured in such an accident is entitled to certain economic compensation from his own insurance company regardless of fault." *Id.* (quotation marks and citation omitted). "A primary goal of the no-fault act is to provide an efficient, affordable system of automobile insurance," *Stevenson v Reese*, 239 Mich App 513, 519; 609 NW2d 195 (2000), resulting "in expeditious compensation of damages" while minimizing "administrative delays and factual disputes," *Brown v Home-Owners Ins Co*, 298 Mich App 678, 685; 828 NW2d 400 (2012).

No-fault insurance is compulsory for Michigan motorists. *McCormick*, 487 Mich at 234. That is, "the no-fault act requires car owners to be primarily responsible for insurance coverage on their vehicles." *Fuller v GEICO Indemnity Co*, 309 Mich App 495, 503; 872 NW2d 504 (2015) (quotation marks and citation omitted). Specifically, "MCL 500.3101(1) mandates a vehicle's owner or registrant to maintain three types of coverage under his or her no-fault policy: security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance." *Fuller*, 309 Mich App at 503 (quotation marks and citation omitted). With regard to insurers, the no-fault act "specifies the order in which various potentially liable insurers will be required to cover a claim for benefits." *Parks v Detroit Auto Inter-Ins Exch*, 426 Mich 191, 201; 393 NW2d 833 (1986). As a general matter, a passenger on a municipal bus, who is not covered by any other policy, is entitled to PIP benefits from the insurer of the bus. See MCL 500.3114(2).

Under the no-fault act, entities, like the City in this case, can be both the owner of a vehicle and a "self-insurer." See *Enterprise Leasing Co of Detroit v Sako*, 233 Mich App 281, 284; 590 NW2d 617 (1998). To obtain self-insured status, an entity must represent that it is able and willing to satisfy judgments against it. *Id.* A certificate of self-insurance serves as "the

functional equivalent of a commercial policy of insurance with respect to the no-fault act." *Id*. In other words, pursuant to MCL 500.3101(4), "[t]he no-fault act explicitly treats a self-insurer as an insurer, with 'all the obligations and rights of an insurer.' " *Allstate Ins Co v Elassal*, 203 Mich App 548, 554; 512 NW2d 856 (1994).

Turning to the present case, for purposes of the no-fault act there is no dispute that the City is a self-insurer, required to pay PIP benefits to Bronner for the injuries he sustained in the accident. The City paid Bronner's no-fault benefits. The dispute concerns GFL's liability.

### 1. CONTRACTUAL SHIFTING OF NO-FAULT PRIORITY

Before turning to the dispositive issue, we first recognize that the services contract cannot be interpreted as an attempt to shift GFL into the position of the primary no-fault insurer in this case, as such a contractual shift in priority is void because the City, as the owner of the bus, cannot abdicate its responsibility to pay primary PIP benefits in accordance with the no-fault act. See *Fuller*, 309 Mich App at 502-504. This prohibition on the shift of liability typically has been applied in the context of rental car agencies attempting to pass on responsibility for no-fault insurance to renters or the renters' insurance agencies. Recognizing that an owner of a vehicle has a statutory obligation to maintain primary no-fault insurance coverage for use of its vehicles, see MCL 500.3101, the Michigan Supreme Court has concluded that an owner—including an owner who is self-insured—cannot contractually shift this statutory responsibility for maintaining primary no-fault benefits to another party. See *State Farm Mut Auto Ins Co v Enterprise Leasing Co*, 452 Mich 25, 33-36; 549 NW2d 345 (1996). See also *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 261-263; 819 NW2d 68 (2012); *Auto-Owners Ins Co v Martin*, 284 Mich App 427, 449; 773 NW2d 29 (2009). However, the City paid no-fault benefits to Bronner. Therefore, no impermissible shift in priority occurred through the contract.

### 2. CONTRACTUAL INDEMNIFICATION

The City asserts that GFL's contractual agreement to indemnify the City for losses caused by GFL's negligence requires GFL's reimbursement to the City for PIP benefits paid to Bronner. We conclude that the indemnification clause of the agreement is unenforceable under the no-fault act.

As noted, *supra*, "[p]arties are free to contract as they see fit, and courts must enforce contracts as written unless they are in violation of law or public policy." *Village of Edmore*, 322 Mich App at 263, citing *Wilkie*, 469 Mich at 51. Where the term of a contract "is in conflict with . . . the no-fault act, the language of the statute must prevail . . . ." *State Farm Mut Auto Ins Co v Ruuska*, 412 Mich 321, 336; 314 NW2d 184 (1982).

Unlike mandatory PIP coverages, parties to a contract are free to shift the costs associated with optional no-fault coverages. In *Universal Underwriters Ins Co v Kneeland*, 464 Mich 491; 628 NW2d 491 (2001), our Supreme Court considered a "courtesy car agreement" between a car dealership and an individual borrowing a vehicle while work was done on her personal vehicle. *Id*. at 492-493. The agreement contained a clause in which the individual borrowing the car "agree[d] to assume all responsibility for damages" while the vehicle was in her possession. *Id*. On appeal, the Michigan Supreme Court considered the meaning of this provision and whether it

violated the no-fault act by shifting responsibility for all no-fault liability. The Court determined that the clause was ambiguous with regard to the shift in responsibility because it could be read to shift "any" damages or, in the alternative, it could be more narrowly read to apply only to collision damages which arise while a car is in the borrower's possession as compared to medical and other costs which would arise after an accident and are mandated by statute. *Id*. at 496-498.

Presuming that the parties intended to enter into a valid and enforceable agreement, the Court concluded that the parties *only* intended to shift liability for collision damages, an *optional* form of coverage under the no-fault act. *Id*. at 496-499. Emphasizing that collision coverage was an optional form of coverage, the Court concluded that allocating responsibility for collision coverage was purely a matter of contract that did not violate the no-fault act. *Id*. 500. Indeed, the holding in *Universal Underwriters* specifically recognized that a contractual allocation of responsibility for collision damages is not void under the no-fault act because "[t]he statutory language does *not* reflect an intent to abolish *contractual* liability for collision damages, an *optional* form of insurance *not required by the no-fault act.*" *Id*.

The Court acknowledged the limitations of its holding in a footnote, emphasizing that its holding was "limited to contract claims for *collision* damages" and offering "no view regarding the legality of a contract purporting to shift liability for other categories of damages." *Id*. Elsewhere, citing *State Farm Mut Auto Ins Co*, 452 Mich at 36, the *Universal Underwriters* Court suggested that a "shift of liability" that "could reach damages for which no-fault insurance coverage is mandatory . . . might contravene the no-fault act." *Universal Underwriters Ins Co*, 464 Mich at 496-497. But, the Court did not decide whether a contractual shift reaching beyond optional collision coverage was illegal; instead, the Court simply noted that the "argument is available" for future cases. *Id*. at 496 n 3.

As noted, left unanswered by the *Universal Underwriters* decision is whether parties may contractually seek reimbursement for damages subject to mandatory coverage under the no-fault act. See *id*. We conclude that the text of the no-fault statute provides the only way for shifting the costs of mandatory PIP coverage after payment is made, and because the private indemnification agreement used in this case is not anticipated by the act, it is unenforceable.

When it interprets a statute, a reviewing court seeks to ascertain and implement the intent of the Legislature. *Huron Mountain Club v Marquette Co Rd Comm*, 303 Mich App 312, 323; 845 NW2d 523 (2013). The Legislature's intent is best expressed through the plain meaning of the statute's language. *Ter Beek v City of Wyoming*, 495 Mich 1, 8; 846 NW2d 531 (2014).

Although there is no provision expressly prohibiting an insurer from contracting away the cost of its obligation to provide mandatory PIP benefits, this Court has recognized the comprehensive nature of the no-fault act. *Citizens Ins Co of Am v Buck*, 216 Mich App 217, 223; 548 NW2d 680, 684 (1996) ("The no-fault act provides a comprehensive scheme for payment, as well as recovery, of certain "no-fault" benefits, including personal protection insurance benefits."). This comprehensive scheme provides limited avenues for insurers, like the City, to recover the costs incurred from paying PIP benefits.

The Michigan Catastrophic Claims Association (MCCA), is one avenue available. The MCCA is a statutorily created organization of all insurers who provide no-fault insurance in

Michigan. MCL 500.3104. The MCCA is required to reimburse member companies for the amount of PIP losses they incur in excess of a certain dollar amount per claim (*i.e.*, "catastrophic claims"). To fund its statutory indemnification obligations, the MCCA assesses premiums on member companies in relation to the number of no-fault policies each member writes in Michigan.[1] Insurers then pass these assessments along to their Michigan policyholders.[2] For uninsured Michigan automobile accident victims, the Michigan Assigned Claims Plan (MACP) assigns claims to insurers for payment of no-fault benefits, and insurers pass on these costs to policyholders through increased premiums. MCL 500.3171-3172; MCL 500.3385. Finally, MCL 500.3116 permits insurers to recover the cost of PIP benefits by exerting a lien on tort recovery in certain limited circumstances. These statutory provisions represent the only way permitted by the no-fault act for shifting costs after PIP benefits have been paid to the injured party. By negative implication of these provisions, other reimbursement mechanisms are prohibited.[3]

Because "[i]t is well settled that when a statute provides a remedy, a court should enforce the legislative remedy rather than one the court prefers." *City of S Haven v Van Buren Co Bd of Com'rs*, 478 Mich 518, 528–29; 734 NW2d 533 (2007) (citation omitted). Where a statute gives rights and prescribes remedies, such remedies must be strictly pursued. *Id.* Because the no-fault act does not provide any other vehicle for passing on or recouping costs associated with

---

[1] See MCL 500.3104(7)(d), which provides in pertinent part:

> Each member shall be charged an amount equal to that member's total written car years of insurance providing the security required by [MCL 500.3101(1) ] or [MCL 500.3103(1) ], or both, written in this state during the period to which the premium applies, multiplied by the average premium per car. The average premium per car shall be the total premium calculated divided by the total written car years of insurance providing the security required by section 3101(1) or 3103(1) written in this state of all members during the period to which the premium applies.

[2] See *United States Fidelity Ins. & Guaranty Co v Michigan Catastrophic Claims Ass'n*, 483 Mich 918, 432 n 32; 762 NW2d 911 (2009); *In re Certified Question (Preferred Risk Mut Ins Co v Michigan Catastrophic Claims Ass'n)*, 433 Mich 710, 729, 449 NW2d 660 (1989) (explaining that the MCCA premiums are "inevitably" "passed on" to Michigan's no-fault insurance customers); MCL 500.3104(22), which provides that "[p]remiums charged members by the association shall be recognized in the rate-making procedures for insurance rates in the same manner that expenses and premium taxes are recognized."

[3] See Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), 107-111. Additionally relevant is the whole-text canon, which encourages us to look at the entire statutory scheme. See *id.* at 167 ("Perhaps no interpretative fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts.").

providing PIP benefits, beyond those associated with the MCCA, the MACP, or exerting a lien on tort recovery, the City is foreclosed from shifting this cost to GFL. If the legislature had desired other cost-shifting procedures, or wants to in the future, it is the legislature's province to create the appropriate statutory mechanism to do so. It is beyond the role of this Court to create such a mechanism by judicial fiat.

In sum, the indemnification agreement between the City and GFL as it relates to the recoupment of mandatory PIP payments is unenforceable under the no-fault act. Thus, we reverse the trial court's order granting summary disposition in favor of the City and remand with direction to the trial court to enter an order granting GFL's motion for summary disposition.

## III. ATTORNEY FEES

GFL also argues that the trial court erred when it awarded attorney fees to the City pursuant to the terms of the services contract.[4] We agree.

## A. STANDARD OF REVIEW &APPLICABLE LAW

Generally, a trial court's decision to award attorney fees, and the reasonableness of the fees, is reviewed by this Court for an abuse of discretion. *Patrick v Shaw*, 275 Mich App 201, 204; 739 NW2d 365, 369 (2007), aff'd 480 Mich 1050 (2008). However, the award of attorney fees in this case is a matter of contract. The interpretation of a contract is a question of law that this Court reviews de novo. *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). "An error of law necessarily constitutes an abuse of discretion." *Denton v Dep't Of Treasury*, 317 Mich App 303, 314; 894 NW2d 694 (2016).

"Michigan courts follow the American Rule with respect to the payment of attorney fees and costs." *Pransky v Falcon Group, Inc*, 311 Mich App 164, 193; 874 NW2d 367 (2015), lv den 499 Mich 908 (2016). Under this rule, each party is responsible for his or her own attorney fees unless an express legal exception applies. *Id*. at 194; *Fleet Bus Credit v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 589; 735 NW2d 644 (2007). A recognized exception to the American Rule exists when the parties have a contract regarding payment of attorney fees.

---

[4] Importantly, the City has not requested attorney fees as a result of it being the prevailing party or having been successful in its litigation in this case. Rather, the City sued for attorney fees for being required to litigate Bronner's request for payment of damages for injuries caused by the negligence of GLF's employee, Herndon. As we have stated, for the purposes of this appeal, the parties are not disputing whether Herndon negligently caused the automobile accident. Therefore, while we have held that the services contract could not shift responsibility from the City to GFL for the payment of PIP benefits, the no-fault act does not bar a contractual agreement by GFL to pay for the attorney fees for litigation arising out of its negligence. "Nothing in the no-fault system relieves a motor vehicle operator of liability which he may have incurred in contract." *Nat'l Ben Franklin Ins Co v Bakhaus Contractors, Inc*, 124 Mich App 510, 513; 335 NW2d 70 (1983). See also *Universal Underwriters Ins Co*, 464 Mich at 500.

*Fleet Bus Credit*, 274 Mich App at 589. Contracts for payment of attorney fees are valid and enforceable unless contrary to public policy. *Pransky*, 311 Mich App at 194.

## B. ANALYSIS

The City sought attorney fees under Article 9 of the services contract, which states, in pertinent part, that GFL "agrees to indemnify, defend, and hold the City harmless against and from . . . fees and expenses for attorneys . . . to the extent caused by . . . [a]ny negligent or tortious act, error or omission attributable in whole or in part to [GFL] or any of its Associates . . . ." The relevant language requires GFL to pay the City's fees and expenses for attorneys "to the extent caused by" GFL's negligence. Although GFL's negligence led to the current lawsuit, the current lawsuit did *not* cause the City to incur expenses for payment of in-house attorney fees and costs. Indeed, the City does not dispute that these individuals would have been paid regardless of the current lawsuit. Accordingly, it cannot be said that GFL caused the City to incur these salaries, to have these salaries imposed upon the City, or to have the salaries asserted against the City. As such, the City is not entitled to seek payment of the City's in-house attorneys under this term of the contract. See, e.g., *Escanaba & Lake Superior R Co v Keweenaw Land Ass'n, Ltd*, 156 Mich App 804, 817-818; 402 NW2d 505 (1986) (holding that attorney fees for in-house counsel accrued in the regular course of business were not payable under similar circumstances). We therefore also reverse that order by the trial court.

## IV. CONCLUSION

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Michael J. Riordan
/s/ Thomas C. Cameron