*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARY FREE BED REHABILITATION
HOSPITAL,

FOR PUBLICATION
March 02, 2026
2:19 PM

        Plaintiff-Appellant,

v

No. 370846
Kent Circuit Court
LC No. 22-008294-NF

ESURANCE PROPERTY AND CASUALTY
INSURANCE COMPANY and UNITED
SERVICES AUTOMOBILE ASSOCIATION,

        Defendants-Appellees.

Before: CAMERON, P.J., and KOROBKIN and BAZZI, JJ.

KOROBKIN, J.

Under Michigan's no-fault act, MCL 500.3101 *et seq*., a motorcyclist injured in a motor vehicle accident must claim personal protection insurance (PIP) medical benefits from insurers in a specified order of priority, and the insurers of the owner, registrant, or operator of the motor vehicle involved in the accident are higher in priority than the motor vehicle insurers of the owner, registrant, or operator of the motorcycle. MCL 500.3114(5). This case presents a question of first impression: whether such an injured person or their treatment provider, once their expenses exhaust and exceed a $250,000 coverage limit in the policy of a higher-priority insurer, may move down the priority list and claim additional benefits from a lower-priority insurer that provides unlimited coverage. The answer to that question, we hold today, is yes.

Plaintiff, Mary Free Bed Rehabilitation Hospital, appeals by right the trial court's orders granting summary disposition to defendants, Esurance Property and Casualty Insurance Company (Esurance) and United Services Automobile Association (USAA). Plaintiff provided treatment to the injured motorcyclist in this case, Esurance was the insurer of the motor vehicle involved in the accident, and USAA was a motor vehicle insurer whose coverage included the motorcycle's operator. The trial court granted summary disposition to Esurance on grounds that its policy had a $250,000 coverage limit (which had been exhausted), and to USAA on grounds that the no-fault act did not allow plaintiff to seek further payments from a lower-priority insurer whose policy provides unlimited coverage.

On appeal, plaintiff contends that the Esurance policy was unlimited—that is, not capped at $250,000—because Esurance failed to demonstrate compliance with the statutory requirements for the effective selection of coverage levels. Plaintiff also contends that even if the Esurance policy is capped, USAA is liable for coverage beyond Esurance's $250,000 limit. For the reasons set forth in this opinion, we agree with the trial court that the Esurance policy had a $250,000 coverage limit, but we disagree with the trial court's conclusion that the no-fault act does not allow plaintiff to recover from USAA under its unlimited policy. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND AND FACTS

This case arises out of a motor vehicle accident that occurred on November 12, 2020. Aaron Slade rode a motorcycle belonging to his cousin the wrong way down Seaway Drive in Muskegon. Slade was catastrophically injured when he collided head-on with a vehicle that was owned and driven by Haley Tanner. Slade was treated at several medical facilities for multiple serious injuries, including a severe traumatic brain injury, before being transferred to plaintiff's facility for inpatient rehabilitative care.

Tanner had insured her vehicle through Esurance effective September 15, 2020. Her policy purportedly carried a coverage limit of $250,000. Meanwhile, Slade's father maintained an insurance policy through USAA on two motor vehicles driven by himself and Slade's mother, effective from October 15, 2020 to April 14, 2021, which included unlimited PIP medical-benefits coverage. USAA does not contest that Slade is a covered person under his parents' policy as a relative domiciled in their household.[1] See MCL 500.3114(1).

Plaintiff's charges to Slade for medical treatment amounted to $1,183,565.59. Esurance paid $113,307.30 to plaintiff but declined to make further payments on the basis that the policy's PIP medical-benefits limit had been exhausted. Plaintiff's counsel then sent a letter to USAA demanding that USAA pay for Slade's PIP medical benefits under his parents' policy. But USAA denied plaintiff's demand on the ground that Esurance was higher in priority and had already provided coverage.

In September 2022, plaintiff filed suit against defendants Esurance and USAA, claiming that defendants failed to pay certain PIP insurance benefits in violation of the no-fault act. Count I of plaintiff's second amended complaint asserted statutory claims for PIP medical benefits against Esurance. Count II asserted statutory claims for PIP medical benefits against USAA. Count III asserted a claim for declaratory relief against both Esurance and USAA, requesting a declaration that they owed PIP coverage. And Count IV asserted a claim that USAA had breached a contract of which plaintiff was an intended third-party beneficiary.

Plaintiff moved for partial summary disposition under MCR 2.116(C)(10), arguing that USAA's policy applied to Slade because he was domiciled with his parents. Plaintiff's motion

---

[1] According to Slade's mother, Slade had been living out of a travel trailer located on his parents' property "off and on" for three years before the accident. Slade also received his mail at his parents' address.

further asserted that the 2019 amendments to the no-fault act allowed plaintiff to "stack" Esurance and USAA's policies according to the order of priority in MCL 500.3114(5) such that USAA was obligated to pay for PIP medical benefits after Esurance's coverage limit was exhausted. USAA disputed plaintiff's ability to stack Esurance and USAA's policies, arguing that only Esurance's policy applied. In a July 19, 2023 opinion and order, the trial court concluded that plaintiff was not allowed to stack insurance policies, and granted summary disposition instead to USAA.[2] Plaintiff moved for reconsideration, but the trial court declined to revive Counts II and III against USAA.[3]

Esurance moved for summary disposition under MCR 2.116(C)(8) and (C)(10) on the ground that Esurance had already paid out its policy maximum PIP medical-benefits coverage of $250,000. In response, plaintiff argued that coverage under the Esurance policy should be deemed unlimited, not capped at $250,000. Specifically, plaintiff argued that Tanner, in procuring insurance coverage for her vehicle, had failed to make an "effective selection" of the $250,000 coverage limit as required under MCL 500.3107c. The trial court took the motion under advisement and allowed Esurance to submit business records showing that Tanner had in fact paid premiums under the policy. Following the submission of said records, the trial court issued an opinion and order on March 13, 2024 granting Esurance's motion for summary disposition, concluding that Esurance was entitled to a presumption that the premiums paid accurately reflected a $250,000 PIP medical-benefits coverage limit and that plaintiff could not rebut this presumption. As a result, Counts I and III against Esurance were dismissed.

All plaintiff's claims having been dismissed, plaintiff now appeals.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's determination on a motion for summary disposition. *McMaster v DTE Energy Co*, 509 Mich 423, 431; 984 NW2d 91 (2022). This Court also reviews de novo issues of statutory interpretation. *Id*.

Summary disposition under MCR 2.116(C)(10) is proper when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). "On the other hand, summary disposition is proper under MCR 2.116(I)(2) 'if the court determines that the opposing party, rather than the moving party, is entitled to judgment as a matter of law.' " *Rataj v City of Romulus*, 306 Mich App 735, 746; 858 NW2d 116 (2014) (citation omitted).

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim. The court must consider all evidence submitted by

---

[2] Although it did not state so explicitly, the trial court effectively granted relief to USAA under MCR 2.116(I)(2) (nonmoving party entitled to judgment).

[3] The trial court agreed to reinstate Count IV on the basis that it was not the subject of plaintiff's motion for partial summary disposition and had been dismissed in error. The parties thereafter stipulated to the dismissal of Count IV.

the parties in the light most favorable to the party opposing summary disposition. Only when the record does not leave open an issue upon which reasonable minds might differ may a motion under MCR 2.116(C)(10) be granted. [*McMaster*, 509 Mich at 431 (citations omitted).]

III.  ANALYSIS

Plaintiff argues that Slade is entitled to unlimited PIP benefits, either through Tanner's Esurance policy, or, should we hold that Esurance's policy is capped at $250,000, through Slade's parents' unlimited USAA policy. As explained below, we reject plaintiff's position regarding the Esurance policy, but agree with plaintiff as to the USAA policy.

The no-fault act became law in 1973, providing "an innovative social and legal response to the long payment delays, inequitable payment structure, and high legal costs inherent in the tort (or 'fault') liability system." *Shavers v Kelley*, 402 Mich 554, 578; 267 NW2d 72 (1978). The act sought "to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses." *Id*. at 578-579. To do so, it required Michigan motorists to purchase no-fault insurance to legally operate a motor vehicle. *Id*. at 579. "Under this system, victims of motor vehicle accidents would receive insurance benefits for their injuries as a substitute for their common-law remedy in tort." *Id*.

MCL 500.3107(1)(a) requires that motor vehicle insurance policies provide, with some exceptions, payment for "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a). Until 2019, individuals injured in motor vehicle accidents were entitled to receive uncapped (that is, unlimited) lifetime PIP medical benefits for allowable expenses. See *Douglas v Allstate Ins Co*, 492 Mich 241, 257; 821 NW2d 472 (2012), citing MCL 500.3107(1), as enacted by 1972 PA 294, as amended by 1991 PA 191.

"Unsurprisingly, Michigan's no-fault automobile insurance system has been the subject of continual debate, praise, criticism, amendment, and litigation since its creation . . . ." *Andary v USAA Cas Ins Co*, 512 Mich 207, 217; 1 NW3d 186 (2023). And although "Michigan's system of no-fault insurance . . . succeeded in ensuring lifetime benefits for those who suffer catastrophic injuries in an automobile accident, the issue of cost has been subject to ongoing debates for decades." *Id.* at 218. In its latest effort at reform, the Legislature in 2019 "made sweeping changes to Michigan's no-fault statutes when it enacted 2019 PA 21 and 2019 PA 22." *Id.* In a seismic shift, these amendments allowed those who procured insurance to limit or even decline PIP medical benefits for policies issued or renewed after July 1, 2020. See 2019 PA 21; 2019 PA 22; MCL 500.3107c (addressing the process for selecting limited coverage); MCL 500.3107d (addressing the process for declining coverage); MCL 500.3109a (addressing the process for exclusions from limited coverage). Especially relevant here, MCL 500.3107c(1)(b) allows a person responsible for maintaining insurance to limit PIP medical benefits to $250,000. Those willing to pay higher premiums in exchange for greater benefits may choose to maintain coverage for unlimited lifetime PIP benefits. See MCL 500.3107c(1)(d).

-4-

As was the case before the 2019 amendments, individuals injured in motor vehicle accidents must generally seek no-fault benefits from their own PIP policies (or that of a spouse or relative domiciled in the same household), unless one of the exceptions in MCL 500.3114(2), (3), or (5) applies. MCL 500.3114(1); *Hmeidan v State Farm Mut Auto Ins Co*, 326 Mich App 467, 476-477; 928 NW2d 258 (2018). This case concerns the exception in MCL 500.3114(5), which provides the "order of priority" by which an operator or passenger of a motorcycle injured in a motor vehicle accident must claim no-fault benefits:

> Subject to subsections (6)[4] and (7),[5][6] a person who suffers accidental bodily injury arising from a motor vehicle accident that shows evidence of the involvement of a motor vehicle while an operator or passenger of a motorcycle shall claim personal protection insurance benefits from insurers in the following order of priority:
>
> (a) The insurer of the owner or registrant of the motor vehicle involved in the accident.
>
> (b) The insurer of the operator of the motor vehicle involved in the accident.
>
> (c) The motor vehicle insurer of the operator of the motorcycle involved in the accident.
>
> (d) The motor vehicle insurer of the owner or registrant of the motorcycle involved in the accident.

---

[4] MCL 500.3114(6) provides as follows:

> If an applicable insurance policy in an order of priority under subsection (5) is a policy for which the person named in the policy has elected to not maintain coverage for personal protection insurance benefits under section 3107d, or as to which an exclusion under section 3109(2) applies, the injured person shall claim benefits only under other policies, subject to subsection (7), in the same order of priority for which no such election has been made. If there are no other policies for which no such election has been made, the injured person shall claim benefits under the next order of priority or, if there is not a next order of priority, under the assigned claims plan under sections 3171 to 3175.

[5] MCL 500.3114(7) provides as follows:

> If personal protection insurance benefits are payable under subsection (5) under 2 or more insurance policies in the same order of priority, the benefits are only payable up to an aggregate coverage limit that equals the highest available coverage limit under any 1 of the policies.

[6] The limitations in Subsections (6) and (7) were added by the 2019 amendments. See 2019 PA 21.

Although motorcyclists are not legally obligated to purchase PIP insurance, MCL 500.3101(1); *Perkins v Auto-Owners Ins Co*, 301 Mich App 658, 665-666; 837 NW2d 32 (2013), motorcyclists who are injured in accidents with motor vehicles may claim PIP benefits. See *Underhill v Safeco Ins Co*, 407 Mich 175, 186; 284 NW2d 463 (1979). The priority scheme in MCL 500.3114(5) aims to ensure that injured motorcyclists will be able to obtain no-fault benefits from at least one no-fault insurer. See *Hmeidan*, 326 Mich App at 479-480; see also *Underhill*, 407 Mich at 188-189 (discussing policy reasons for the Legislature's choice to allow motorcyclists to obtain no-fault benefits). Usually—but not always—that is the insurer of the owner of the involved motor vehicle, listed highest in priority under MCL 500.3114(5). See *Griffin v Trumbull Ins Co*, 509 Mich 484, 498-499, 505-506; 983 NW2d 760 (2022). Following the 2019 amendments, the motorcycle accident scenario is the only remaining type of claim with an "order of priority" for payment of PIP benefits. Compare MCL 500.3114(5) with former MCL 500.3114(4), as enacted by 1972 PA 294, as amended by 2016 PA 347 (providing order of priority for injured occupants of motor vehicles), and former MCL 500.3115(1), as enacted by 1972 PA 294 (providing order of priority for injured non-occupants of motor vehicles).

In this case, it is undisputed that Slade was injured in a motor vehicle accident while operating a motorcycle. It is also undisputed that Slade is covered under both Tanner's Esurance policy, which Esurance argues is limited to $250,000 in PIP medical-benefits coverage, and his parents' USAA motor vehicle policy, which carried unlimited PIP medical-benefits coverage.

Esurance's policy is highest in priority under MCL 500.3114(5)(a) and (b) because Tanner was the owner and operator of the motor vehicle in the accident. USAA's unlimited policy is lower in priority under MCL 500.3114(5)(c) because that subsection applies to any motor vehicle policy that covers a motorcycle operator. See *Hmeidan*, 326 Mich App at 480-481. Esurance asserts that its policy has been exhausted because its coverage is capped at $250,000. Plaintiff disagrees and seeks recovery from Esurance for outstanding charges for Slade's medical care that exceed $1,000,000. Accordingly, we first determine what level of coverage applies to Esurance's policy as the highest-priority insurer.

A. ESURANCE

Plaintiff argues that the trial court erred by granting summary disposition to Esurance and that plaintiff was entitled to summary disposition under MCR 2.116(I)(2). We disagree.

MCL 500.3107c provides detailed requirements for how the selection of coverage options under the no-fault act is to be presented and effectuated. See generally *Bronson Healthcare Group, Inc v Esurance Prop and Cas Ins Group*, 348 Mich App 428; 19 NW3d 151 (2023). If a policyholder's selection of coverage complies with the requirements of MCL 500.3107c(1), then the selected coverage limits apply to their policy. If they have *not* made an "effective selection" of coverage under Subsection (1), but the policy was issued or renewed and a premium or premium installment has been paid, then under Subsection (3) the insurer is entitled to a rebuttable presumption that the amount of the premium or installment accurately reflects the level of coverage indicated. MCL 500.3107c(3). Finally, if there is no "effective selection" of coverage under Subsection (1) *and* the presumption in Subsection (3) does not apply, then unlimited coverage will apply to the policy. MCL 500.3107c(4).

Plaintiff argues that Tanner's selection of limited coverage was not effective under Subsection (1) and that the elements for the rebuttable presumption have not been satisfied under Subsection (3), such that there is no coverage limit on Esurance's policy.[7] We consider each requirement in turn.

## 1. EFFECTIVE SELECTION

Plaintiff first argues that Tanner failed to make an "effective selection" of coverage limited to $250,000 under MCL 500.3107c(1) and MCL 500.3107e. We agree that Esurance has failed to demonstrate that Tanner made an effective selection.

MCL 500.3107c(1) provides that an insured "shall" select a coverage option "in a way required under" MCL 500.3107e. MCL 500.3107e states that "a person must make a selection" in one of three ways, and pertinent here, one way to make an effective selection is by "[e]lectronically marking the form and providing an electronic signature as provided in the uniform electronic transactions act, 2000 PA 305, MCL 450.831 to 450.849 [UETA]." MCL 500.3107e(2)(c). As we explained in *Bronson*, 348 Mich App at 445, within the UETA,

> MCL 450.832(h) defines "electronic signature," in relevant part, as a symbol executed or adopted by a person with intent to sign the record, and MCL 450.839(1) provides that an electronic signature is attributable to a person if it was "the act of the person." MCL 450.839(1). MCL 450.839(1) and (2) then explain how a party can show that a signature was "the act of the person."

More specifically, MCL 450.839 provides as follows:

> (1) . . . The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.

---

[7] We reject Esurance's argument that plaintiff lacks standing to challenge the effectiveness of Tanner's selection because plaintiff is not an intended third-party beneficiary of the contract. "Standing generally refers to the right of a plaintiff initially to invoke the power of a trial court to adjudicate a claimed injury." *Pueblo v Haas*, 511 Mich 345, 355; 999 NW2d 433 (2023) (quotation marks and citation omitted). "[A] litigant has standing whenever there is a legal cause of action." *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket Nos. 165537, 165538, and 165964); slip op at 18 (quotation marks and citation omitted). MCL 500.3112 expressly provides that healthcare treatment providers under the no-fault act "may . . . assert a direct cause of action against an insurer . . . ." See *C-Spine,* ___ Mich at ___; slip op at 27-28. Plaintiff thus has standing to challenge the effectiveness of Tanner's selection because MCL 500.3112 gives it a legal cause of action. See *id.* at ___; slip op at 18, 27-28.

(2) The effect of an electronic record or electronic signature attributed to a person under subsection (1) is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including any agreements of the parties, and otherwise as provided by law.

In support of its argument that Tanner signed the PIP selection form, Esurance provided the PIP coverage form containing an "X" for "Option 4," which limited coverage to $250,000 per person.[8] At the bottom of the form appeared the following:

| APPLICANT/NAMED INSURED SIGNATURE | DATE |
|---|---|
| HALEY TANNER | 09/15/2020 |

[Image of 2-column table. Column 1, row 1 states: Applicant/Named Insured Signature (in bold font.) Column 1, row 2 states: Haley Tanner. Column 2, row 1 states: Date (in bold font). Column 2, row 2 states: 09/15/2020.]

This PIP coverage document containing Tanner's purported signature is Esurance's only evidence that the coverage selection was effective. Tanner testified at her deposition that although she remembered selecting coverage online, she did not remember seeing the coverage limits form in question. And she did not remember selecting a cap of $250,000 per person per accident with exclusions or signing and dating the coverage limits form. Tanner's name merely appearing on the PIP coverage document, without more, does not "in and of itself suggest[] that it was executed or adopted" by Tanner. *Bronson*, 348 Mich App at 445. As Esurance presented no other evidence besides "merely offer[ing] a document with an electronically printed name and date," it did not demonstrate that the coverage selection was effective. See MCL 500.3107e; *Bronson*, 348 Mich App at 445.

## 2. REBUTTABLE PRESUMPTION

Given that there was no effective selection under MCL 500.3107c(1), we turn to whether Esurance is entitled to the presumption under MCL 500.3107c(3). We conclude that it is.

MCL 500.3107c(3) states three preconditions for the rebuttable presumption as follows:

If an insurance policy is issued or renewed as described in subsection (1) and the applicant or named insured has not made an effective selection under subsection (1) but a premium or premium installment has been paid, there is a rebuttable presumption that the amount of the premium or installment paid accurately reflects the level of coverage applicable to the policy under subsection (1).

---

[8] The marked option also excluded Tanner herself from coverage, but according to Esurance, Tanner did not provide proof of qualified health coverage. See MCL 500.3107d. Whether there was an effective self-exclusion is not pertinent to this appeal.

In *Bronson*, we explained that this provision "provides that if (1) a policy is issued as described in MCL 500.3107c(1), and (2) the insured did not make an effective selection for PIP coverage under that subsection, but (3) the insured still made a premium payment, then there is a rebuttable presumption that the level of coverage corresponds to the premium payment made." *Bronson*, 348 Mich App at 447. We also stated that "this rebuttable presumption is not self-executing in the sense that, for it to apply, the defendant must establish that the amount of the premium paid accurately reflects the level of coverage." *Id.* at 452.

Here, Esurance issued a policy to Tanner, Tanner did not make an effective selection of coverage, and the record reflects that Tanner made premium payments to Esurance. The elements of the rebuttable presumption have therefore been satisfied. See MCL 500.3107c(3). Plaintiff does not offer evidence to rebut the presumption, but because the presumption "is not self-executing," Esurance must also "establish that the amount of the premium paid" by Tanner "accurately reflects" a $250,000 limit for PIP coverage. *Bronson*, 348 Mich App at 452.

On this point, plaintiff argues that Esurance failed to do so because it did not provide an affidavit or other evidence showing that the premium paid "accurately reflects" a $250,000 limit. We disagree.

In *Bronson*, the defendant presented an affidavit by its underwriter, Stefanie Paradis, who averred that the premium corresponded to the coverage selected. *Id*. at 436. The affidavit was submitted after the close of discovery, two days before the trial court heard argument on competing motions for summary disposition, and defendant never listed Paradis on its witness list. *Id*. at 436, 452. This Court reasoned that "(1) defendant's untimely introduction of Paradis as a witness and (2) the fact that Paradis's affidavit is the only evidence explicitly stating that the premium paid by Russell corresponded to a $250,000 limit for PIP coverage" warranted a remand to allow plaintiff to perform additional discovery. *Id.* at 452-453.

This case is distinguishable. In support of the proposition that the premium paid by Tanner "accurately reflects" a $250,000 limit for PIP coverage, Esurance points to the policy declarations page for Tanner's policy, which reflects a full-term total premium of $568, with $21 of the premium allocated to PIP coverage and a note that refers to a supplemental policy declarations page. The supplemental policy declarations page, in turn, states that Tanner's coverage contains a $250,000 limit for PIP medical. It adds that the PIP medical coverage limits will apply to future renewals of the policy unless a new PIP coverage form is completed, and that making a full or partial premium payment confirms "the accuracy of and desire to continue" the PIP coverage limit selected. We conclude that this evidence sufficiently connects the dots between the amount of the premium paid and the selection of limited PIP coverage such that Esurance has shown that the premium paid "accurately reflects the level of coverage." MCL 500.3107c(3); *Bronson*, 348 Mich App at 452.

In *Bronson*, the untimely underwriter's affidavit was the only evidence offered. See *id.* at 452. Here, by contrast, the policy declarations page and supplemental policy declarations page are complemented by other evidence. Esurance presented a policy dashboard document showing premium payments made on the policy from October 2020 through February 2024, with the initial premium aligning with the total premium amount stated in the policy declarations page. And Tanner testified at her deposition that she sought coverage that met the minimum requirements for

car insurance and that she switched from another insurer to obtain cheaper coverage with Esurance. Tanner also acknowledged that she paid every month on the policy, renewing it several times.

The *Bronson* Court also based its decision in large part on the untimeliness of the submitted affidavit. Although it is true here that Esurance submitted the payment ledger after the close of discovery and after the hearing on Esurance's motion for summary disposition, it was undisputed that Tanner made premium payments. So the untimeliness of this evidence was not material. Instead, the pertinent evidence demonstrating that the premium amount paid reflected the PIP coverage limit (that is, the policy declarations page and the supplemental policy declarations page) was timely disclosed during discovery. Therefore, unlike the plaintiff in *Bronson*, plaintiff was not prejudiced. See *id*. at 453.

In short, Esurance established that its policy limit was $250,000. And plaintiff does not dispute that Esurance paid benefits to the policy limit. See *Love v Rudolph*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369895); slip op at 15 ("The limit applies to anyone with a right to claim PIP benefits under the policy. MCL 500.3107c(5).") (emphasis omitted). Accordingly, the trial court was correct to enter summary disposition in favor of Esurance.

### B. USAA

Having determined that Esurance, the higher-priority insurer, was entitled to summary disposition because its coverage limits were exhausted, we turn to whether plaintiff may also recover PIP benefits from the unlimited policy issued by USAA, the lower-priority insurer. Plaintiff argues that the trial court erred by ruling that the no-fault act prohibits it from claiming PIP medical benefits from USAA after Esurance's policy coverage was exhausted. We agree.

Resolution of this issue requires us to examine MCL 500.3114(5) and other provisions of the no-fault act. As stated above, MCL 500.3114(5) provides that an injured motorcyclist

> shall claim personal protection insurance benefits from insurers in the following order of priority:
>
> (a) The insurer of the owner or registrant of the motor vehicle involved in the accident.
>
> (b) The insurer of the operator of the motor vehicle involved in the accident.
>
> (c) The motor vehicle insurer of the operator of the motorcycle involved in the accident.
>
> (d) The motor vehicle insurer of the owner or registrant of the motorcycle involved in the accident.

As discussed, before the 2019 amendments, PIP medical benefits for allowable expenses were unlimited, see *Douglas*, 492 Mich at 257, so no-fault litigation generally centered on identifying the highest-priority insurers for payment. Now that policyholders can choose no or

limited coverage, identifying the highest-priority insurer will not necessarily result in the injured motorcyclist or treating medical provider obtaining enough benefits to cover incurred medical expenses. Whether an injured motorcyclist or treating medical provider may recover from lower-priority insurers under MCL 500.3114(5) when the PIP benefits of higher-priority insurers are exhausted is a novel issue.

When interpreting a statute, this Court's goal is to "ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute." *Douglas*, 492 Mich at 256 (quotation marks and citation omitted). This Court must consider "the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme." *Id*. (quotation marks and citation omitted). "Courts must give effect to every word, phrase, and clause in a statute, and must avoid an interpretation that would render any part of the statute surplusage or nugatory." *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). Undefined statutory terms are given their plain and ordinary meaning. *Id*. And although "we have long recognized that when a statute is clear and unambiguous, the courts must apply the statute as written, we have also acknowledged that the no-fault act is remedial in nature and is to be liberally construed in favor of the persons who are intended to benefit from it." *Griffin*, 509 Mich at 497 (cleaned up).

The relevant statute directs injured persons to claim benefits "from insurers in the following order of priority." MCL 500.3114(5). "Priority" is not defined in the no-fault act, but when analyzing disputes that implicated priority rules under the former version of MCL 500.3114(5), as added by 1980 PA 446, Michigan courts construed "order of priority" to mean the order of preference or precedence for payment of benefits. See, e.g., *Frierson v West American Ins Co*, 261 Mich App 732, 735-738; 683 NW2d 695 (2004); *Farmers Ins Exch v Farm Bureau Ins Co*, 272 Mich App 106, 111-112; 24 NW2d 485 (2006). In the context of a priority dispute before the 2019 amendments, courts looked to the order of priority to determine which insurers had precedence to pay. See *Farmers Ins Exch*, 272 Mich App at 111-112. To determine which insurer or insurers were responsible for payment, one began at the top of the list and worked one's way down to identify insurers and determine which came first. See *id.* at 111-114. Once the court located a first-in-priority insurer, that was the end of the inquiry—there was no need to look further down the priority list. See *id.* at 114. But the fact that the inquiry ended when the first-in-priority insurer was identified was a function not of the language of MCL 500.3114(5) itself—which contains no limiting language in this regard—but that responsible insurers were required to provide unlimited benefits under former MCL 500.3107(1).[9] Accordingly, whether claimants were precluded from going to the next insurer in the order of priority if benefits at a higher level were exhausted was never at issue.

Turning to the current version of MCL 500.3114(5), we read "in the following order of priority" to similarly mean that benefits must be claimed in the order of preference listed in the statute from MCL 500.3114(5)(a) through (d). See *Griffin*, 509 Mich at 506-507 ("MCL 500.3114(5) provides that a person 'shall claim personal protection insurance benefits from insurers' in a specified order.") (emphasis added). But as this case shows, because the 2019 amendments allow policyholders to decline or limit PIP coverage, there may be circumstances in

---

[9] As enacted by 1972 PA 294, as amended by 1991 PA 191, as amended by 2012 PA 542.

-11-

which the benefits sought exceed the first-in-priority insurer's policy limits. Under such circumstances, and when a lower-priority insurer has a higher limit (or, as is the case here, no limit at all), we hold that the plain language of MCL 500.3114(5) allows an injured motorcyclist or their treating medical provider to recover from such lower-priority insurers once coverage by a higher-priority insurer is exhausted. This is because nothing in the language of Section 3114(5), which sets out a sequential list of insurers,[10] prohibits continuing down the priority ladder to obtain benefits if a higher-priority insurer's policy is inadequate.

This reading is also consonant with the reform's amendments that allow policyholders to select from a menu of coverage levels at different price points, see MCL 500.3107c; MCL 500.3107d, paired with the no-fault act's enduring principle that individuals injured in motor vehicle accidents generally seek no-fault benefits under their own PIP policies that they or their family members have paid for. See MCL 500.3114(1). The order of priority for injured motorcyclists features not only the insurers of the owner, registrant, or operator of the involved motor vehicle, MCL 500.3114(5)(a)-(b), but also the motor vehicle insurers of the operator, owner, or registrant of the motorcycle, MCL 500.3114(5)(c)-(d). To deny an injured motorcyclist access to their own unlimited-coverage policy, should a higher-in-priority policy associated with the accident vehicle be capped, runs counter to the spirit of the no-fault act and its 2019 amendments which prioritize personal choice in insurance policies.

Our reading also accords with the act's purpose of providing those injured in car accidents "assured, adequate, and prompt" coverage to which they have a claim, *Shavers*, 402 Mich at 578-579, by not limiting an injured person to an inadequate policy just because it happens to be higher in priority when another policy provides more coverage. It is also consistent with the premise that the no-fault act "is remedial in nature and is to be liberally construed" to benefit those injured in motor vehicle accidents. *Griffin*, 509 Mich at 497 (citation omitted); see also *Shavers*, 402 Mich at 578-579.

Supporting this interpretation, as plaintiff points out, is our Supreme Court's history of indicating that whether an insurer is higher in priority is distinct from whether an injured person is covered by that insurer's policy. See *Dye by Siporin & Assoc, Inc v Esurance Prop & Cas Ins Co*, 504 Mich 167, 191 n 61; 934 NW2d 674 (2019); *Bosco v Bauermeister*, 456 Mich 279, 301 n 7; 571 NW2d 509 (1997) (ascribing a rule of law to priority disputes, but not coverage disputes). The no-fault act's priority statutes "do not provide additional coverage; they merely dictate which insurer will pay claims that have already been established." *Dye*, 504 Mich at 191 n 61. Thus, the fact that a lower-priority insurer need not pay benefits immediately does not mean that the injured person no longer has coverage under that insurer's policy.

The Supreme Court's decision in *Griffin* is consistent with this theme. In that case, a motorcyclist was seriously injured in an accident involving a truck but was unable to identify the

---

[10] The Legislature's use of the plural "insurers" rather than "insurer" in MCL 500.3114(5) has a neutral effect on our interpretation. Although this language could be seen as not limiting the number of insurers from which one can claim benefits, there can also be multiple insurers in the same order of priority. See MCL 500.3114(7).

truck's insurer—which was highest in priority under MCL 500.3114(5)—despite acting with diligence in an attempt to do so. *Griffin*, 509 Mich at 491, 498-499, 503. Although *Griffin* does not answer the question of whether a lower-priority insurer can be liable once a higher-priority insurer's policy is exhausted, it does recognize that "when it would be practically impossible for a party to learn the identity of the presumed highest-priority insurer, then an injured party should be able to look to another insurer in the order of priority, such as their default PIP insurer . . . ." *Id*. at 506. *Griffin* thus recognizes that, at least under some circumstances, being lower in priority does not absolve an insurer from potential liability to pay benefits.

Surrounding statutory provisions provide additional context and support for our interpretation. We begin with MCL 500.3114(6), which immediately follows the order of priority for motorcyclist claims in MCL 500.3114(5), and excludes certain types of policies from the order of priority:

> If an applicable insurance policy in an order of priority under subsection (5) is a policy for which the person named in the policy has elected to not maintain coverage for personal protection insurance benefits under section 3107d, or as to which an exclusion under section 3109[a](2)[11] applies, the injured person shall claim benefits only under other policies, subject to subsection (7), in the same order of priority for which no such election has been made. If there are no other policies for which no such election has been made, the injured person shall claim benefits under the next order of priority or, if there is not a next order of priority, under the assigned claims plan [(MACP)] under sections 3171 to 3175.

The parties each argue that this provision supports their own position; plaintiff argues that it addresses priority within a specific factual situation that may arise under the reform legislation, whereas USAA argues that it provides the one and only mechanism by which an injured motorcyclist can move down the order of priority to claim PIP benefits.

Plaintiff has the better argument. The plain language of MCL 500.3114(6) excludes from the order of priority any insurance policies that do not maintain PIP medical coverage under MCL 500.3107(1)(a) by operation of either the opt-out provision in MCL 500.3107d or the exclusions in MCL 500.3109a(2). In other words, an injured motorcyclist can claim PIP benefits only from those insurers in the order of priority whose policies include *some* PIP medical-benefits coverage. If no such policy exists, Section 3114(6) directs claimants to proceed to the next order of priority, or, as a last resort, to the MACP. This provision effectively eliminates the pro rata sharing that would otherwise occur between two insurers in the same order of priority under MCL

---

[11] Although MCL 500.3114(6) refers to "section 3109(2)," this is a typographical error. *Love*, ___ Mich App at __; slip op at 11. MCL 500.3109(2) merely defines "an injured person," which is irrelevant, while MCL 500.3109a(2) provides for exclusions from PIP medical coverage. As the Compiler's Notes to MCL 500.3114 states, "In subsections (4) and (6), the reference to 'section 3109(2)' evidently should read 'section 3109a(2).' "

500.3114(8)[12] in cases in which one insurer provides no PIP benefits. But nothing in the language of the provision prohibits an injured motorcyclist from looking to a lower-priority insurer if benefits are capped at a higher order of priority. Instead, we agree with plaintiff that Section 3114(6) narrowly addresses a situation in which a claimant simply cannot access *any* PIP benefits at a higher level of priority because of an elected exclusion or declined coverage. And Section 3114(6) is not implicated by these facts.

Another provision of the no-fault act, MCL 500.3107c(6), lends further support to our conclusion that injured motorcyclists may recover PIP benefits from a lower-priority insurer with unlimited coverage after exhausting the policy of a higher-priority insurer with limited coverage. Recall that Section 3107c concerns the selection of coverage levels for PIP benefits and allows policyholders to limit coverage. MCL 500.3107c(6) provides: "If benefits are payable under section 3107(1)(a) under 2 or more insurance policies, the benefits are only payable up to an aggregate coverage limit that equals the highest available coverage limit under any 1 of the policies." This provision anticipates that claimants can obtain benefits from more than one policy and is silent as to whether those policies are in the same or a different level of priority. If more than one policy is in play, Section 3107c(6) limits the total aggregate benefits to the highest limit under any one policy. In other words, if a higher-priority policy and a lower-priority policy both have $250,000 limits, the claimant cannot recover from the latter after exhausting the former; the total recovery cannot exceed $250,000. But because Section 3107(c)(6) allows recovery "up to an *aggregate* coverage limit that equals the *highest* available coverage limit" (emphasis added), this statutory provision evinces an understanding that multiple policies can be accessed when one has a higher limit than the other. Plaintiff's claim against USAA fits within those parameters.

USAA argues that this provision does not support plaintiff's position because yet a different statutory provision, MCL 500.3114(7), which is specific to injured motorcyclists under Section 3114(5), does not contemplate obtaining benefits from insurers in different orders of priority. MCL 500.3114(7) provides: "If personal protection insurance benefits are payable under subsection (5) under 2 or more insurance policies in the same order of priority, the benefits are only payable up to an aggregate coverage limit that equals the highest available coverage limit under any 1 of the policies." Like Section 3107c(6), which more broadly covers PIP benefits payable under Section 3107(1)(a), this provision sets an aggregate limit when two or more insurers are responsible, but narrowly addresses policies falling within the same order of priority. But we do not read MCR 500.3114(7)'s plain language as limiting plaintiff's ability to recover PIP benefits from lower-priority insurers; rather, it provides the rules for equitable distribution of the loss between insurers *within the same order of priority*, alongside MCL 500.3114(8). In sum, the

---

[12] MCL 500.3114(8) provides as follows:

Subject to subsections (6) and (7), if 2 or more insurers are in the same order of priority to provide personal protection insurance benefits under subsection (5), an insurer that pays benefits due is entitled to partial recoupment from the other insurers in the same order of priority, and a reasonable amount of partial recoupment of the expense of processing the claim, in order to accomplish equitable distribution of the loss among all of the insurers.

plain language of MCL 500.3114(7) does not prohibit plaintiff from claiming PIP benefits from USAA.

USAA's interpretation effectively equates MCL 500.3107c(6), which addresses all types of PIP claims, with MCL 500.3114(7), which is specific to injured motorcyclist claims. But Section 3107c(6) does not mention order of priority, and Section 3114(7) only addresses the case of insurers in the same order of priority. The Legislature knows how to say, "same order of priority," but did not do so in Section 3107c(6). Compare MCL 500.3114(6)-(8) (using the phrase "same order of priority"). Further, if, as USAA argues, an injured motorcyclist may claim PIP benefits from more than one insurer only if the insurers are within the same order of priority, then Section 3114(7) would render Section 3107c(6) nugatory as to motorcyclist claims, contrary to the rule against surplusage. See *Koontz*, 466 Mich at 312. Instead, we read Section 3114(7) as a more specific rule than Section 3107c(6) only as between two insurers in the same "order of priority"— a scenario that could only arise with injured motorcyclist claims under Section 3114(5), but does not preclude USAA's liability here.

Our interpretation is further bolstered by the fact that the 2019 legislative reforms paired the addition of MCL 500.3107c(6) and MCL 500.3114(7) with the removal of former MCL 500.3115(3), as enacted by 1972 PA 294:

> A limit upon the amount of personal protection insurance benefits available because of accidental bodily injury to 1 person arising from 1 motor vehicle accident shall be determined without regard to the number of policies applicable to the accident.

This statutory subsection, known as an "antistacking" provision, *O'Hannesian v Detroit Auto Inter-Ins Exch*, 110 Mich App 280, 284; 312 NW2d 229 (1981), prevented injured persons from obtaining duplicate recovery by stacking policies, *Beaver v Auto-Owners Ins Co*, 93 Mich App 399, 401; 286 NW2d 884 (1979), or even attempting to recover actual losses by recovering more than the maximum work-loss limits established by statute, *O'Hannesian*, 110 Mich App at 284-286. But the no-fault act no longer contains this bar on stacking coverage. The Legislature could have chosen to retain an antistacking provision to prevent motorcyclists from stacking policies to recover benefits from multiple insurers in different orders of priority, but it did not.

USAA argues that plaintiff cannot claim PIP benefits from USAA because Esurance could not recoup payments from USAA under *Auto Club Ins Ass'n v State Farm Ins Co*, 221 Mich App 154; 561 NW2d 445 (1997), overruled on other grounds by *CAM Constr v Lake Edgewood Condo Ass'n*, 465 Mich 549; 640 NW2d 256 (2002). USAA points to the proposition that an insurer may not recoup benefits from another insurer in a lower-priority level. See *id.* at 164. As stated, MCL 500.3114(8) permits recoupment between two or more insurers within the same order of priority, which can occur in accidents involving multiple vehicles. See also *Farmers Ins Exc v Titan Ins Co*, 251 Mich App 454, 458; 651 NW2d 428 (2002) (explaining that a substantively identical statute, former MCL 500.3115(2), as enacted by 1972 PA 294, permitted an insurer who has paid out benefits to recoup from another insurer in the same order of priority.) Additionally, when an insurer pays benefits that a higher-priority insurer was responsible for, the lower-priority insurer may sue for equitable subrogation. See *Griffin*, 509 Mich at 502. USAA argues that the logic of preventing higher-priority insurers from recovering from lower-priority insurers should

extend to claimants, barring them from recovering additional benefits from lower-priority insurers. But we fail to see how this follows, as recoupment by insurers and recovery of benefits by claimants are distinct concepts in the no-fault act. Setting aside the absence of statutory language supporting this interpretation, this argument fails to consider the principle that we construe the act liberally for the benefit of claimants, not insurers. See *Griffin*, 509 Mich at 497. Whether Esurance could recoup benefits from USAA is of no moment and is not at issue here.

USAA also argues that the Michigan Department of Insurance and Financial Services (DIFS) interprets the no-fault act in agreement with it position. We give agency interpretations of statutes respectful consideration and do not overrule them without cogent reasons, but they are not binding on courts and cannot conflict with the Legislature's intent as expressed in the statute's language. *In re Complaint of Rovas Against SBC Michigan*, 482 Mich 90, 103; 754 NW2d 259 (2008). USAA cites a frequently-asked-questions webpage regarding the 2019 no-fault amendments, which provides:

> 7. Under the new law, because some motor vehicle owner/registrants may have opted out of PIP or chosen a reduced limit, will motorcyclists be limited to recovering for their injuries from that policy?
>
> Under the new law, a motorcyclist involved in an accident with a motor vehicle would continue to seek PIP from the insurer of the motor vehicle but would be subject to any PIP choice limits on the policy. If no PIP coverage is available in the order of priority, a motorcyclist is eligible for up to $250,000 in PIP benefits from the Michigan Assigned Claims Plan. [Michigan Department of Insurance and Financial Services, *Auto Insurance Reform FAQ* <https://www.michigan.gov/difs/industry/insurance/faq/no-fault-faq> (accessed February 25, 2026).]

Although this statement does indicate that an injured motorcyclist's recovery from the higher-priority insurer would be subject to the applicable policy's coverage limit, notably the statement is silent as to whether the motorcyclist could seek additional payments from their own policy. However, even if we were to construe DIFS's statement as taking the position that the motorcyclist could not recover from another insurer in the order of priority, as discussed above, we must reject such a policy because it conflicts with our interpretation of the statute's plain meaning. See *In re Rovas*, 482 Mich at 103.

Nor does *Love v Randolph*, ___ Mich App ___, a coverage and priority dispute among multiple insurers regarding an accident involving a motorcycle and several motor vehicles, dictate a different result. There, the motor vehicle insurer that would otherwise be the highest-priority insurer under MCL 500.3114(5) argued that it was not in the order of priority to pay benefits for the injured motorcyclist because the policyholder, who selected a policy with a $250,000 limit, excluded herself from PIP coverage. See *id.* at ___; slip op at 3-4, 8, 15. We rejected that argument because under MCL 500.3109a(1), a policyholder can only exclude themselves, their spouse, or a relative in the household from coverage—they cannot exclude a third-party accident victim. See *id.* at ___; slip op at 15. During the analysis, we stated that "the *limit* [on PIP coverage] applies to anyone with a right to claim PIP benefits under the policy. MCL 500.3107c(5)." *Id.* In isolation, this sentence could be read as supporting USAA's position that coverage may not exceed

the limit on the highest-priority policy. However, it was made in the context of discussing the limits and exclusions applicable to only one policy. See *id.* Moreover, the quoted statute says that the limit selected by the policyholder applies to anyone with a right to claim PIP benefits "under *the* policy," MCL 500.3107c(5) (emphasis added), meaning the particular policy at issue. The question whether a claimant or provider can move down the list in the order of priority to claim benefits from another insurer's policy was not presented in *Love*.

For these reasons, MCL 500.3114(5) and the other provisions of the no-fault act allow plaintiff to recover PIP payments from USAA after Esurance's policy coverage has been exhausted. The trial court therefore erred by granting summary disposition to USAA.[13]

## IV. CONCLUSION

Because Esurance is entitled to the presumption of an effective selection under MCL 500.3107c(3) and its $250,000 policy has been exhausted, the trial court was correct to grant summary disposition to Esurance. But because we hold that the no-fault act allows plaintiff to recover payments from USAA, a lower-priority insurer under MCL 500.3114(5), the trial court erred in granting summary disposition to USAA.

We therefore affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Daniel S. Korobkin
/s/ Thomas C. Cameron
/s/ Mariam S. Bazzi

---

[13] Having decided that plaintiff is entitled to PIP coverage, we need not address plaintiff's alternative argument that the language of USAA's insurance policy entitles plaintiff to PIP coverage. To the extent that USAA argues that its policy contains an antistacking provision that prohibits coverage, because we have determined that the no-fault act allows plaintiff to proceed down the order of priority, any antistacking provision in the USAA policy is void insofar as it conflicts with the statute. See *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 256-257; 819 NW2d 68 (2012) (invalidating and reforming an insurance policy because it contravened the no-fault act); *Auto-Owners Ins Co v Martin*, 284 Mich App 427, 434; 773 NW2d 29 (2009) ("Insurance policy provisions that conflict with statutes are invalid . . . .").